# LAW OFFICES OF HAROLD R. BURKE

POST OFFICE BOX 4078
GREENWICH, CONNECTICUT 06831
WWW.BURKE-LEGAL.COM

MEMO ENDORSED

MEMBER, STATE AND FEDERAL BARS OF
CONNECTICUT AND NEW YORK

TELEPHONE (203) 219-2301
FACSIMILE (203) 413-4443
E-MAIL HRB@BURKE-LEGAL.COM

**VIA ELECTRONIC MAIL**

May 19, 2022

Allan Kassenoff, Esq. kassenoffa@gtlaw.com
161 Beach Avenue
Larchmont, New York 10538

Gus Dimopoulos, Esq. gd@dimolaw.com
Dimopoulos Bruggemann PC
73 Main Street
Tuckahoe, New York 10707

Re:  *Catherine Kassenoff v. Allan Kassenoff et al.*
     *7:22-CV-002162-KMK*

Dear Messrs. Kassenoff and Dimopoulos:

I am writing in response to your joint letter dated May 12, 2022 and as required by Judge Karas' Individual Rules of Practice. Before addressing your assertions, based upon the appearances filed I understand that each of you are appearing individually and *pro se*. As an appearance has not been filed for Dimopoulos Bruggemann PC, please advise whether an appearance will be filed and by whom.

A. *Subject Matter Jurisdiction*

The Electronic Communications Privacy Act ("ECPA"), and, 18 U.S.C. § 2510 *et seq.*, establish federal criminal and civil liability for the intentional interception or use or disclosure of electronic communications. Section 2701, *et seq.* establishes federal criminal and civil liability for improperly accessing wire and electronic communications and transactional records held by third-party internet service providers. Unless an action has first been initiated in a state court seeking equivalent relief under a state statute (which does not exist in New York), federal subject matter jurisdiction remains extant, and a federal court cannot decline to exercise jurisdiction over a proper claim. *See Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69 (2013). Accordingly, and unless barred by some other doctrine, this matter is properly before the District Court.

It should be noted that the "domestic relations" exception to federal court jurisdiction, articulated in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992), does not supplant federal court

jurisdiction in ECPA proceedings; there is no implied immunity for interspousal interceptions. *See Zaratzian v. Abadir*, 2014 U.S. Dist. LEXIS 129616 (S.D.N.Y. 2014).

Most importantly, the causes of action in the instant action were not and could not have been brought in or vindicated by the Divorce Action, where no monetary damages for each statutory violation, compensatory and punitive damages, or attorney's fees and costs are available to recover, as clearly sought herein. *See* Complaint "Wherefore" Clause at ¶¶ 1-4; *Razzano v. Remsenburg-Speonk Union Free School Dist.*, 17-775-CV (2nd Cir 2018) (noting "*res judicata* will not be applied if the initial forum did not have the power to award the full measure of relief sought in the later litigation"); *Nestor v. Pratt & Whitney*, 466 F.3d 65 (2nd Cir. 2006) (no *res judicata* effect for subsequent federal lawsuit seeking attorney's fees, compensatory damages, and punitive damages that were unavailable in prior proceeding). The relief requested (and that could have been granted) in the Divorce Action was limited to relief such as the suppression of the electronic communications, their return/destruction, and an instruction to the forensic evaluator. By contrast, the damages sought here include "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000". 18 U.S.C. § 2520(c).

*B. Collateral Estoppel / Issue Preclusion*

You have presented the claim that because the Westchester Supreme Court has purportedly addressed aspects of what would ordinarily be raised in a ECPA proceeding, *i.e.*, interception and consent, my client is barred from re-litigating such issues. In my view this question falls within the scope of the *Rooker-Feldman* doctrine.

Broadly, the *Rooker-Feldman* doctrine prevents federal courts from assuming jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The *Rooker-Feldman* doctrine is confined to cases brought after the state proceedings have ended." *Mann v. Boatright*, 477 F.3d 1140, 1146 (10th Cir. 2007). In this case, the injuries complained of consist of violations of the ECPA, not a challenge to the state court's decision.

The doctrine of collateral estoppel, or issue preclusion, is "grounded on concepts of fairness and should not be rigidly or mechanically applied." *LaFleur v. Whitman*, 300 F.3d 256, 271 (2nd Cir. 2002). This doctrine only applies when: (1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was "actually litigated and actually decided"; (3) there was "a full and fair opportunity for litigation in the prior proceeding"; and, (4) the issues previously litigated were "necessary to support a valid and final judgment on the merits." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2nd Cir. 1986); *Kaufman v. Eli Lilly & Co*, 65 N.Y.2d 449, 456 (1985); *see also Knopf v. Esposito*, 17-CV-4151 (2nd Cir. 2020).

Ascertaining "finality" on the merits "turns upon such factors as the nature of the decision . . ., the adequacy of the hearing, and the opportunity for review." *See Ali v. Mukasey*, 529 F.23d 478 (2nd Cir. 2008); *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2nd Cir. 1961). Here, the decision provides no analysis of the mixed legal and factual questions surrounding interception and consent. Moreover, you are aware that the issues of interception and consent remain *sub judice* before the Appellate Division, Second Department. *See Allan Kassenoff v. Catherine Kassenoff,* 2020-06187. *See e.g., Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F.Supp.2d 340,

2

346 (E.D.N.Y. 2010) (*Rooker-Feldman* "inapplicable unless all state proceedings – including appeals – have ended before the federal action commences").

With respect to the adequacy of the hearing, *"a full and fair opportunity to litigate the issue"*, the Court of Appeals for the Second Circuit has instructed that "the various elements which make up the realities of litigation" should be explored. *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 734 (2d Cir. 2001). In this instance, the Westchester Matrimonial Part "resolved" the important legal and factual questions surrounding the issues of interception and consent "on the papers" only.

As you each well know, the trial court refused to grant discovery on these issues, refused to hold any evidentiary hearings, and refused to grant my client an opportunity to cross examine any affiant. Such action does not comport with any generally accepted notion of due process or even adhere to the Uniform Civil Rules for the Supreme Court and the County Court. *See* § 202.20-i.[1] In fact, the Westchester County matrimonial and family courts have a long and disturbing history of failing to afford litigants basic due process when it comes to questions involving fundamental rights, let alone federal statutory rights *See S.L. v J.R.*, 27 N.Y.3d 558 (2016) (Final order of custody made in the absence of an evidentiary hearing. In fact, the trial court never conducted any hearings related to the best interests determination that was ultimately made. Such actions violated the appellant's fundamental due process rights).

Like *res judicata,* collateral estoppel is an affirmative defense that should be pled in the answer, not on a motion to dismiss. *See Technomarine Sa v. Giftports, Inc.*, 758 F.3d 493 (2nd Cir. 2014). Unless it is clear from the face of the complaint, "a defense such as collateral estoppel is normally to be raised as an affirmative defense". *Brandon v. NPG Records, Inc.*, 20-CV-1715 (2nd Cir. 2020).

C.   *Statute of Limitations*

Any claim that the two-year statute of limitations has expired is erroneous. Under 18 U.S.C. § 2520(e) and § 2707(f) the two-year period commences upon discovery -- specifically, no later than two years following the date upon which the claimant first had a "reasonable opportunity" to discover the violation. Moreover, each violation (interception, use, or disclosure and/or accessing stored messages) creates a new two-year limitations period for that violation. Here, my client discovered the <u>violations</u> in March 2020.

---

[1] Uniform Civil Rules for the Supreme Court and the County Court § 202.20-i. *Direct Testimony by Affidavit*. The court may require that direct testimony of a party's own witness in a non-jury trial or evidentiary hearing shall be submitted in affidavit form, provided, however, (a) that the court may not require the submission of a direct testimony affidavit from a witness who is not under the control of the party offering the testimony and (b) the opposing party shall have the right to object to statements in the direct testimony affidavit and the court shall rule on such objections, just as if the statements had been made orally in open court. Where an objection to a portion of a direct testimony affidavit is sustained, the court may direct that such portion be stricken. *The submission of direct testimony in affidavit form shall not affect any right to conduct cross-examination or re-direct examination of the witness.* (Italics added).

3

There can be little dispute that ascertaining the commencement of the two-year limitations period is a fact-intensive inquiry. Moreover, "the statute of limitations is ordinarily an affirmative defense that must be raised in the answer", not on a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b). *Bruno v. Casella Waste Sys., Inc.*, 14-3991-CV (2nd Cir. 2015). *See also Salameno v. Rawlings,* 19-CV-4442, fn. 8 (S.D.N.Y. 2021); *Harris v. TD Ameritrade Inc.,* 338 F.Supp.3d 170, 188 (S.D.N.Y. 2018).

In light of the foregoing, your seeming reliance on a date of March 9, 2020 to trigger the applicable statute of limitations is erroneous. First, the interception, access, publication and re-publication of the subject electronic communications collectively and conservatively gave rise to the mistreatment of Ms. Kassenoff, on March 27, 2020, when she was evicted from her home and temporarily lost custody of her Children, *inter alia,* on an *ex parte* order. *See* Complaint at ¶¶ 34-35. Second, the most recent date upon which Defendants "republished the Text Messages in a filing in the Divorce Action" was alleged to be March 16, 2020. Because both March 16, 2020 and March 27, 2020 are less than two years from the filing date of this action on March 16, 2022, this action was timely filed. *See* Complaint at ¶ 33.

D. *Dimopoulos and Dimopoulos Bruggemann PC Are Proper Defendants*

Your own statements make the point that Defendants Dimopoulos and Dimopoulos Bruggemann are properly named as defendants. You rely on case law confirming that attorneys and law firms can be sued for "tortious" acts such as the ones set forth in the Complaint. Moreover, the Complaint itself alleges "willful" and "intentional" misconduct by Defendants Dimopoulos and his law firm. *See* Complaint ¶¶ 28-35, 43-49, 57-59, and 65. Attorneys have no immunity under the ECPA. *See Zaratzian v. Abadir*, 2012 U.S. Dist. LEXIS 189566.

E. *Ad hominem and irrelevant statements*

Your letter contains a number of misstatements that are irrelevant to the question of whether a motion to dismiss the Complaint in this case should be permitted. Ordinarily I would ignore such comments. However, to the extent that you included such commentary in an effort to have this case "pre-judged", the following must be noted.

Unlike Mr. Kassenoff, my client has never been treated for a mental illness and never had one. Any assertion that my client must "get the help that she needed" is nothing more than a self-serving statement with no basis in fact. For the last seven years, she has served as Special Counsel to the Governor of New York. During a previous five-year period, she served as an Assistant United States Attorney in the Eastern District of New York. While serving in these capacities she has met the highest of vetting standards which includes receiving a top-secret clearance during the period she worked for the United States Department of Justice.

My client's objection to the involvement of Dr. Abrams in the Divorce Action was proper and appropriate, and was ultimately validated when, on or about August 24, 2021, Dr. Abrams was removed from the First and Second Judicial Department Panels of Forensic Custody Evaluators for gross impropriety. *See* NYSCEF Doc. No. 2055. Notably, Dr. Abrams' financial alignment with each of you during the course of the forensic evaluation that led to the grant of temporary custody to Mr. Kassenoff was a primary complaint lodged with the Mental Health Professionals Certification Committee that ultimately removed Dr. Abrams.

Dr. Abrams also relied on the very electronic communications at issue in the instant case in recommending custody to Mr. Kassenoff thereby constituting an additional use and disclosure violation by Defendants.

Dr. Abrams has since been replaced as the forensic evaluator in the Divorce Action. *See* NYSCEF Doc. No. 2295. Moreover, Ms. Kassenoff's complaint about Dr. Adler, a long-time colleague of Dr. Abrams, is grounded in similarly concerning behavior. Dr. Adler has since stepped down from the Divorce Action.[2]

Finally, the trial court judge, the Hon. Louis Lubell, presided over Dr. Abrams' September 2021 wedding and received excessive campaign contributions from Mr. Dimopoulos and his firm. After this information was discovered, Judge Lubell agreed there was "strong support for his recusal" He recused himself from, the Divorce Action in November 2021.

*F.     Conclusion*

Defendants fail to advance any arguments sufficiently meritorious to warrant the filing of a motion to dismiss the Complaint. The state court action is ongoing and the issue of how the electronic communications are to be handled for purposes of the final trial remains pending on appeal. That court, which did not even hold a hearing, lacks the power to grant full relief to my client under the ECPA. As there is no basis to bar the continuation of this federal action, it must be allowed to proceed.

Very truly yours,

Harold R. Burke

HRB/st

cc.     Client
Hon. Kenneth Karas via karasnysdchambers@nysd.uscourts.gov

The Court will hold a pre-motion conference on 6/15/22, at 10:30

So Ordered.

5/25/22

5