UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

CATHERINE KASSENOFF,

       Plaintiff,

       v.                                Case No. 7:22-cv-02162-KMK

ALLAN KASSENOFF,
CONSTANTINE G. DIMOPOULOS,
AND DIMOPOLOUS BRUGGEMANN PC,

       Defendants.

-------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT DATED MARCH 15, 2022**

**Submitted on behalf of the Plaintiff, Catherine Kassenoff**

**Harold R. Burke
Harold R. Burke, LLC
P.O. Box 4078
Greenwich, CT 06831**

**Tele: (203) 219-2301
Fax: (203) 413-4443
Email: hrb@burke-legal.com**

**August 19, 2022**

**TABLE OF CONTENTS**

Page

I      INTRODUCTION         1

II.    RELEVANT FACTUAL BACKGROUND      2

III.   THE LEGAL STANDARD ON A MOTION TO DISMISS      2

IV.   ARGUMENT      3

    A.    The Wiretap Act and Stored Communications Act Claims
        Are Not Time-Barred      3

    B.    The Federal Court Should Not Apply the Doctrine of
        *Res Judicata*/Claim Preclusion      9

        1.   No Final Judgment Exists      9

        2.   The Matrimonial Court's Order Does Not Bind Dimopoulos      10

        3.   The Matrimonial Court Cannot Provide Full Relief      11

    C.    Collateral Estoppel Has Not Been Established      12

        1.   A Full and Fair Opportunity to Litigate Did Not Occur      13

        2.   There Has Been No Final Adjudication on the Merits      16

V.    CONCLUSION      17

VI.   CERTIFICATE OF SERVICE      18

Plaintiff, Catherine Kassenoff ("Plaintiff"), by and through her attorney, Harold R. Burke, submits the following memorandum of law in opposition to the motion to dismiss filed by Defendants Allen Kassenoff ("Kassenoff"), Constantine G. Dimopoulos ("Dimopoulos") and Dimopoulos Bruggeman, P.C. ("D-B")

## I.      INTRODUCTION

This case was filed on March 16, 2022, alleging violations of 18 U.S.C. § 2511 *et seq.* ("the Wiretap Act"), 18 U.S.C. § 2701 *et seq.* ("the Stored Communications Act"), trespass to chattels, and *prima facie* tort arising from violation of New York Penal Law § 250.  The complaint also requests injunctive relief pursuant to 18 U.S.C. §§ 2520(b) and 2707(b). Defendants have moved to dismiss all counts under Fed. R. Civ. P. § 12(b)(6) on the grounds of res judicata, collateral estoppel, and statute of limitations. The arguments and facts opposing this motion are detailed in this memorandum.

As a preliminary matter, this action seeks relief under relevant federal statutes and state common law principles.  This is not a case attempting to vindicate rights that could – or should – be raised or resolved in the underlying matrimonial action.  Rather, this proceeding seeks redress for substantive violations of federal law that were revealed during the matrimonial action that remains pending and for which relief cannot be obtained in that court.

As detailed herein, Defendants' essential claims that res judicata and collateral estoppel foreclose Plaintiff's federal and state causes of action improperly elevate the matrimonial court's subject matter jurisdiction, as well as its stated unwillingness, to adjudicate statutory and common law torts. Simply put, these doctrines do not apply to this case.  As for the claim that the statute of limitations bars Plaintiff's federal claims, this action was commenced within the two-

year discovery window. Additionally, unless apparent on the face of the complaint, when a plaintiff knew or should have known that a limitations period had commenced is ordinarily a mixed question of fact and law not readily ascertainable in the absence of discovery.

## II.        RELEVANT FACTUAL BACKGROUND

Plaintiff relies upon the facts as alleged in her complaint, together with relevant pleadings identified in her Affidavit that has been filed herewith.

## III.       THE LEGAL STANDARD ON A MOTION TO DISMISS

A trial court evaluating a Fed. R. Civ. P. § 12(b)(6) motion to dismiss must accept "as true factual allegations made in the complaint . . . drawing all reasonable inferences in favor of the plaintiff." *Town of Babylon v. Fed. Hous. Fin. Agency,* 699 F.3d 221, 227 (2d Cir. 2012). "Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar", such as lack of timeliness, "as an affirmative defense and it is clear from the face of the complaint and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008).

In evaluating a motion to dismiss for failure to state a claim pursuant to Fed. R. 12(b)(6), the Court can consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

The Court can take notice of certain widely known adjudicative facts not subject to reasonable dispute. *See Fed. R. Evid. 201; Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d*

*234, 246 (S.D.N.Y. 2002)*; *New Alliance Party v. New York Bd. of Elections, 861 F. Supp. 282, 290 n.10 (S.D.N.Y. 1994)*.

A court can take judicial notice of documents and pleadings filed in judicial proceedings when ruling on a motion to dismiss. *See In re Allou Distributors*, 387 B.R. 365, 384 (Bankr. E.D.N.Y. 2008) (*quoting Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). "Judicial notice of public records is appropriate—and does not convert a motion to dismiss into a motion for summary judgment—because the facts noticed are not subject to reasonable dispute and are capable of being verified by sources whose accuracy cannot be reasonably questioned*." See Bentley v. Dennison*, 852 F. Supp. 2d 379, 382, at n. 5 (S.D.N.Y. 2012), *aff'd sub nom. Betances v. Fischer*, 519 F. App'x 39 (2d Cir. 2013) (citing Federal Rule of Evidence 201(b)).

Where evidence outside the complaint must be weighed, however, that action is best left for summary judgment after discovery rather than via judicial notice at the motion to dismiss stage. *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo., No. 04-Civ.-7497*, 458 F. Supp. 2d 160, 2006 U.S. Dist. LEXIS 75664, at *4-5 (S.D.N.Y. Oct. 12, 2006).

## IV.   ARGUMENT

### A.  The Wiretap and Stored Communications Act Claims Are Not Time-Barred

The Wiretap Act provides that a civil action may not be commenced "later than two years after the date upon which the claimant first had reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e).

The Stored Communications Act, 18 U.S.C. § 2707(f), similarly provides that: "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation."

Here, the complaint was filed on March 15, 2022. Accordingly, any claims arising from actionable conduct occurring after March 15, 2020 are not time-barred. As each section includes a discovery provision, claims arising prior to March 15, 2020 may remain actionable if the plaintiff was not in possession of sufficient facts or information placing her on inquiry notice prior to the expiration of the two-year period.

Each non-consensual interception, publication, or use of the illegally obtained communication triggers a separate violation for purposes of the statute of limitations. As both the "discovery doctrine" and "continuing violation doctrine" – neither of which are mentioned by Defendants - are applicable here, the claims are not time-barred unless there is a factual showing that Plaintiff had notice that a specific claim would be time-barred.

Prior to March 16, 2020, Plaintiff was certainly aware that Kassenoff possessed copies of her e-mail and text messages. He had attached copies of such messages in pleadings filed with the matrimonial court on several prior occasions. However, he first disclosed the manner and means by which he obtained Plaintiff's messages on March 16, 2020. Thus, Plaintiff submits that for violations occurring prior to March 16, 2020, the statute of limitations commenced on this date because that is when Plaintiff first discovered that violations of the SCA and Wiretap Act had occurred.

Critically, Plaintiff did not know *how* she had been aggrieved until March 16, 2020 and only discovered this after she received and read the papers Kassenoff filed with the matrimonial court. "General awareness" is insufficient to trigger the statute of limitations. *Directv, Inc. v. Rodkey*, 369 F.Supp.2d 587, 600 (W.D. Pa. 2005). Moreover, "the plaintiff's subjective state of mind is irrelevant." The question is whether, objectively, the available information "would lead a reasonable person either to sue or to launch an investigation that would likely uncover the

4

requisite facts." *See Sparshott v. Feld Entm't, Inc.,* 311 F.3d 425, 429 (D.C. Cir. 2002)*; accord Lanier v. Bryant,* 332 F.3d 999, 1004 (6th Cir. 2003).

"[T]he statute of limitations is ordinarily an affirmative defense that must be raised in the answer", not on a motion to dismiss pursuant to Rule 12(b).  *Bruno v. Casella Waste Sys., Inc.,* 14-3991-CV (2nd Cir. 2015).  *See also Salameno v. Rawlings,* 19-CV-4442, fn. 8 (S.D.N.Y. 2021); *Harris v. TD Ameritrade Inc.,* 338 F.Supp.3d 170, 188 (S.D.N.Y. 2018).  "The issue of when plaintiff knew, or reasonably should have known of the existence of her [wiretap act] cause of action, is a question to be resolved by a jury." *Brown v. Am. Broad. Co., Inc.,* 704 F.2d 1296, 1304 (4th Cir. 1983).

Between June 5, 2019 and March 16, 2020, Plaintiff did not have any specific knowledge of how Defendant Kassenoff had violated her rights – just that he had introduced her text messages in hard copy filings with the matrimonial court.  Critically, she did not know that her laptop computer's integrity had been compromised or - as she learned much later - that one of her passwords had been misused.

On March 16, 2020, Kassenoff revealed how he had obtained Plaintiff's otherwise private and confidential communications:

> A few years ago, I don't recall exactly when, [Plaintiff] said she lost her iPhone. She asked me to log into her Apple iCloud account in order to locate her phone using the Apple feature, "find my iPhone."  I did so using the Apple laptop we had at home that we both used.  In order to log in to her iCloud account, I needed her Apple ID (username and password) which she provided.  It worked, and [Plaintiff] found the location of her phone. Thereafter, she never disassociated her Apple ID with the home computer for a number of years.  This means that Apple iMessages were automatically being sent both to her iPhone and the home computer for several years.  The iMessages that I filed with the Court and sent to Dr. Abrams were obtained by simply opening the laptop at various times in 2018-2019 and taking photos of the iMessages with my iPhone.

See NYSCEF Doc. No. 328 at ¶¶ 9-12.

The Second Circuit addressed this very issue when asked to revive a previously dismissed SCA claims dismissed as time barred. In *Sewell v. Bernardin* it noted that it was not until Sewell became aware that "her password had been 'altered'" that the statute of limitations began to run.  795 F.3d 337, 341 (2nd Cir. 2015).  The court was careful to note:

> "We take judicial notice of the fact that it is not uncommon for one person to hold several or many Internet accounts, possibly with several or many different user names and passwords, less than all of which may be compromised at any one time."

*Id.* at 342.

The court recognized that as  "Sewell did not allegedly discover 'that the integrity of her *computer* had been compromised'" – through the misuse of her password - as of the applicable date, the statute of limitations had not begun.   *Id.*

Similarly, absent knowledge that her password had been compromised, Plaintiff never had notice of her potential claims; Kassenoff first disclosed his behavior on March 16, 202o thereby triggering the limitations period.

It should also be noted that each interception, acquisition, publication, use or disclosure of a protected communication constitutes a separate violation of the Wiretap Act or SCA; and each violation triggers its own separate statute of limitations. *See, e.g., In re Directv, Inc.,* 344 F.Supp.2d 657 (D. Ariz. 2004); *Lombardo v. Forbes,* 192 F.Supp.2d 893, 899 (N.D. Ind. 2002); *Fultz v. Gilliam*, 942 F.2d 396, 402 (6th Cir. 1991) (each unlawful use of tapes constitutes a separate violation of § 2511 subject to a new limitation period).

In *Bliss v. Corecivic, Inc.,* 978 F.3d 1144 (9th Cir. 2020), the Ninth Circuit addressed the meaning of the word "violation" as used in the Wiretap Act:

> The plain import of these definitions is that each interception is a discrete violation.  *Cf. Fultz v. Gilliam,* 942 F.2d 396, 402 (6th Cir. 1991) (holding '[t]he text of the Wiretap Act plainly indicates, and its purpose necessitates, that a new

and discrete cause of action accrue[s] under section 2511(1)(c) each time a recording of an unlawfully intercepted communication is played to a third party who has not yet heard it'); *see, e.g., Allen v. Brown*, 320 F.Supp.3d 16, 37 (D.D.C. 2018) interpreting *Sparshott* as providing authority that 'each interception is a discrete violation,' triggering its own limitations period because the court dismissed the federal wiretap claim where there were no 'incidents of wiretapping which occurred within two years of the plaintiffs' filing suit') (quoting *Sparsbott*, 311 F.3d at 431); *In re Cases filed by Directv, Inc.*, 344 F.Supp.2d 647, 656 (D. Ariz. 2004) (denying a motion to dismiss because 'each violation. . . gives rise to a discrete cause of action' and violations may have occurred within the limitations period) (citation and quotation marks omitted). Construing 'the violation' to refer to a larger pattern or scheme that results in multiple interceptions is inconsistent with the Act's multiple references to 'communication' in the singular.  There simply is no textual basis for morphing what otherwise would be considered separate violations into a single violation because they flow from a common practice or scheme.

Id.

Defendants "republished the text messages in a filing in the matrimonial action on March 16, 2020, two years to the day from the filing of this action on March 16, 2022.  *See* Complaint at ¶ 33.[2]  Each use or disclosure of an illegally obtained communication triggers a new and separate violation for purposes of the statute of limitations.  Accordingly, the unauthorized yet open use and disclosure of Plaintiff's electronic communications between June 5, 2019 and March 16, 2020 does not constitute a waiver of her right to claim these violations.

Separately, under the continuing violation doctrine, "the statute of limitations period may be delayed until the last act" complained of.  *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2nd Cir. 2001).[3]  "A continuing violation is, in essence, a succession of reoccurring violations that

---

[2] Defendants' argue that a prior disclosure of the same electronic communications earlier disclosed in the case -- before the date upon which Defendants made clear that Plaintiff's password had been misused – somehow immunizes later disclosures. At the time of the earlier disclosures, Plaintiff still lacked an understanding of how she had been aggrieved.

[3] As an initial matter, "the discovery rule and the continuing violation doctrine may be applied simultaneously, and they are not inconsistent with one another."  *Directv, Inc. v. Rodkey*, 369

result in damages that are recoverable each time they occur. In theory, each instance of damage should give rise to a new claim and, thus, a new date of accrual." *Directv, Inc. v. Rodkey*, 369 F.Supp.2d 587 (W.D. Pa. 2005).

This doctrine provides that "the limitations period begins to run when the defendant has 'engaged in enough activity to make out an actionable claim'". *Lucente v. County of Suffolk,* 980 F.3d 284, 309 (2nd Cir. 2020). As the court stated in *Washington v. County of Rockland,* 373 F.3d 310, 318 (2nd Cir. 2004), the doctrine applies to claims "composed of a series of separate acts that collectively constitute one unlawful. . . practice." It requires both "(1) that the last act evidencing the continuing practice falls within the limitations period; and (2) that the defendants' conduct is more than the occurrence of isolated or sporadic acts." *Directv*, 369 F.Supp.2d at 606. Each of these elements are satisfied.

Defendants' efforts to exclude the illegal interceptions and disclosures cited in the Complaint, and which occurred prior to March 16, 2020, are misguided. [4] Defendants' illegal actions: first, in intercepting the electronic communications at issue, and then, repeatedly disclosing them in various venues – are not alleged to be "sporadic" or "isolated" acts.

Rather, and as alleged in the Complaint, they must be viewed part and parcel with a continuing and ongoing scheme to deprive Plaintiff of custody of her children via the divorce action. The communications were routed to the court appointed forensic evaluator, Dr. Marc Abrams in late 2019, included in numerous court filings, and disclosed to New York Child Protective Services to counter allegations of child abuse lodged against Kassenoff. In short,

---

F.Supp.2d 587 (W.D. Pa. 2005) (*citing Kichline v. Consol. Rail Corp.,* 800 F.2d 356 (3rd Cir. 1985); *Hodge v. Bluebeard's Castle, Inc.,* 2002 WL 1022524, \*5 n.12 (V.I. 2002)).

[4] There is an additional argument that the injury has not even occurred yet because a final judgment of divorce has yet to be rendered.

Defendants used the intercepted messages and communications to illegally and improperly bolster their position before the matrimonial court.

**B.      The Federal Court Should Not Apply the Doctrine of *Res Judicata*/Claim Preclusion**

The doctrine of *res judicata*, or claim preclusion, requires that four elements be established: "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Medical Computer Sys., Inc. v. U.S.,* 480 F.3d 621 (2nd Cir. 2007). Defendants' claim fails because they cannot establish two elements: a final judgment does not exist; and this matter involves an additional party not bound by the state court proceedings.

      1.      *No Final Judgment Exists*

"Under the doctrine of res judicata, . . . 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action' not just those that were actually litigated." " *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340 (E.D.N.Y. 2010)

In terms of what constitutes a "final judgment" New York law controls the determination of the issue.  In the matrimonial court setting, the New York Court of Appeals has held that an interlocutory order is not a final judgment. Moreover,

> "it is 'only a final judgment upon the merits, which prevents further contest upon the same issue, and becomes evidence in another action between the same parties or their privies. Until final judgment is reached the proceedings are subject to change and modification; are imperfect, and inchoate, and can avail nothing as a bar, or as evidence, until the judgment, with its verity as a record, settles finally and conclusively the questions at issue. An interlocutory order is not such a judgment. It is not a judgment at all.' "

*Bannon v. Bannon*, 270 N.Y. 484, 489 (1936); *Slater v. American Mineral Spirits Co.,* 33 N.Y.2d 443, 448 (1974).

This point, that no final judgment exists, is illustrated by the following scenarios. If prior to a judgment of dissolution of marriage, a party withdraws the action or dies, no judgment can enter. Any interlocutory orders entered during the course of the proceedings necessarily cease to be valid upon the abatement of the proceeding. *See Flournoy v. Flournoy*, 155 Misc. 2d 510, 512 (1992). Accordingly, absent a final judgment of divorce any *pendente lite* order is necessarily interlocutory and non-final and cannot satisfy the doctrine's requirement that a final judgment exist.

      2.      *The Matrimonial Court's Order Does Not Bind Dimopoulos*

Mr. Dimopoulos is Kassenoff's attorney in the matrimonial proceeding. As such, he is not a party to the litigation and as a practical matter cannot be bound by interlocutory orders or even a final judgment. Moreover, the witness – advocate prohibition effectively prevents Dimopoulos from being so bound. *See* New York Rules of Professional Conduct § 3.7(a) (22 NYCRR 1200.0) ("A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact").

Dimopoulos cannot be bound by any final determinations that a state matrimonial court may enter as Plaintiff does not have standing to name him as a party to the divorce proceeding. As the parties in the divorce action clearly differ from the parties in this federal litigation, absent standing, the matrimonial court cannot enter the complete measure of relief that the Plaintiff seeks. Accordingly, as Dimopoulos is a stranger to the matrimonial action he cannot be bound by the matrimonial court but can be bound by a different court that possesses jurisdiction. Accordingly, *res judicata* cannot be invoked by Dimopoulos.  *See Summer v. Marine Midland Bank, N.A.*, 227 A.D.2d 932 (4th Dep't 1996).

3.      *The Matrimonial Court Cannot Provide Full Relief*

As stated by the Restatement:

> The general rule [against re-litigation of a claim] is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.

Restatement (Second) of Judgments § 26(1)(c) cmt. c (1982). Thus, the bar will not apply, where "the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986); *McLearn v. Cowen & Co.*, 48 N.Y.2d 696 (1979).

A New York matrimonial court is a court of equity available to parties seeking the dissolution of their marriage, the entitlement to and award of maintenance, the division of marital assets, and the determination of parental rights and obligations. Domestic Relations Law §§ 143 and 173; *Matter of Sumiya v. Murtari,* 275 A.D.2d 928, 714 N.Y.S.2d 254 (2000), *lv. dismissed,* 96 N.Y.2d 730, 722 N.Y.S.2d 795, 745 N.E.2d 1017 (2001). As a court of equity, litigants are not entitled to a jury trial. *Nagel v. Nagel,* 85 A.D.3d 559 (1st Dept. 2011). However, the salient provisions of the Electronic Communications Privacy Act afford litigants the right to a trial by jury, a right guaranteed by statute and the Seventh Amendment to the Constitution. Plaintiff 's participation in a state matrimonial court proceeding - *the only court with the jurisdiction to dissolve her marriage -* cannot be colorably viewed as constituting a waiver of her right to have her federal ECPA claims adjudicated by a jury.

It is worth noting that the matrimonial court openly stated what it would and would not entertain as part of the divorce proceedings.  Addressing the issue of whether the court would

consolidate Plaintiff's then pending conversion claim with the divorce proceeding, the court stated: *"I can tell you that I'm not consolidating the lawsuit in Brooklyn. I would suggest your client [Kassenoff] make a – respond to it whichever way they deem appropriate."* (Tr. At 51).

Finally, aside from the matrimonial court's refusal to entertain a tort action within the divorce proceedings, Plaintiff was under no obligation to pursue her ECPA claims in a forum that could not provide her with the complete measure of relief against all responsible individuals. Plaintiff's choice of forum is to be respected. *See Gross v. British Broadcasting Corp.,* 386 F.3d 224 (2nd Cir. 2004); *Bigio v. Coca-Cola Co.,* 448 F.3d 176 (2nd Cir. 2006).

### C.     Collateral Estoppel Has Not been Established

The doctrine of collateral estoppel only applies when: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was "actually litigated and actually decided," (3) there was "a full and fair opportunity for litigation in the prior proceeding," and (4) the issues previously litigated were "necessary to support a valid and final judgment on the merits." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2nd Cir. 1986); *Kaufman v. Eli Lilly & Co,* 65 N.Y.2d 449, 456 (1985); *Knopf v. Esposito*, 17-CV-4151 (2nd Cir. 2020).

Critically, this doctrine is "grounded on concepts of fairness and should not be rigidly or mechanically applied." *Lafleur v. Whitman*, 300 F.3d 256, 271 (2nd Cir. 2002) (quoting *D'Arata v. N.Y. Cennt. Mut. Fire Ins. Co.,* 76 N.Y.2d 659, 664 (1990). Indeed, "New York courts have on numerous occasions stressed the importance of an analysis of each case's unique circumstances, rather than the rigid application of bright-line rules, in deciding the preclusive effect of a prior judgment." *Kotler v. Donelli,* 12-1636-pr (Summary Order) (2nd Cir. 2013) (*citing Giakoumelos v. Coughlin,* 88 F.3d 56, 61 (2nd Cir. 1996)).

Plaintiff submits that the matrimonial court's interlocutory ruling does not "support a valid and final judgment on the merits" and was rendered under circumstances not comporting with basic requirements of due process. As such, Defendants cannot meet their burden of establishing that this federal proceeding is subject to collateral estoppel.

1.    *A Full and Fair Opportunity to Litigate Did Not Occur*

At the outset, it must be noted that the ECPA, and its respective provisions addressing intercepted and stored communications, 18 U.S.C. §§ 2510 and 2701, contain a myriad of terms and concepts the meaning and significance of which are mixed issues of law and fact. For example, in *Zaratzian v. Abadir*, 2014 U.S. Dist. LEXIS 129616, copy attached, the trial court determined that the issue of "consent" relative to the interception of e-mail communications constituted a factual question to be determined by a jury.  Similarly, the undisputed facts established that an "interception" of electronic communications, i.e., e-mail, had occurred. *Id*.

The determination of whether key elements of each statute exist is oftentimes a fact intensive determination elucidated through discovery, or in the case of a dispute, through a trial. Simply put, disputes as to the existence or non-existence of substantive factual elements, such as consent or the scope of authorization, cannot ordinarily be ascertained through conflicting affidavits or disputed evidence.  Federal courts do not countenance "trial by affidavit"; "[t]rial by affidavit is no substitute for trial by jury which so long has been the hallmark of "even handed justice." *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464, 473 (19620; *see also Judge v. Buffalo*, 524 F.2d 1321, 1322 (2d. Cir. 1975).

Even in New York, the limitations of "trial by affidavit" have long been recognized. *See New York v. O. J. Gude Co.,* 122 A.D. 741, 746 (1st Dep't 1907) ("Experience has demonstrated that a trial by affidavit is an extremely unsatisfactory way of disposing of questions of fact.")

The same cannot be said of the Westchester matrimonial court hearing Plaintiff's objections regarding the use of her communications and messages.

It would appear to be a straightforward proposition that "[it] is the duty of a trial court, regardless of its own opinion, to follow the law as enunciated by the Court of Appeals, under these circumstances, and not the Appellate Division. "Angelo *v. New York*, 183 Misc. 391 (1944). As evidenced by the actions of the matrimonial court, *which expressly did not permit discovery regarding Kassenoff's interception and/or accessing of Plaintiff's messages or permit live-witness testimony regarding the key substantive issues of consent or authorization*, "trial by affidavit" was apparently a perfectly acceptable means of "fact-finding".  While expedient, the matrimonial court knew or should have known that disputed issues of fact involving fundamental or statutory rights mandated an evidentiary hearing.[5]

The procedure employed by the Plaintiff to challenge Defendants' use of unlawfully intercepted electronic communications, a pre-trial motion to suppress, is expressly authorized by C.P.L.R. 4506 which incorporates by reference Penal Law §250.05.  Rule 4506 (4) ordinarily requires an aggrieved person to file a written motion alleging that the subject recording or evidence is subject to suppression and that it may be used against the movant in a civil trial, hearing or proceeding in which he is a party.

---

[5]  In the absence of stipulated facts or an evidentiary dispute, due process mandates have required that New York matrimonial courts conduct evidentiary hearings in the following instances involving protected rights:  Compelled payment of counsel fees,  *Kaufman v Kaufman*, 189 A.D.3d 31 (2d Dep't 2020);  An award of child custody, *S.L. v J.R.*, 27 N.Y.3d 558 (2016);  Contempt of court stemming from non-payment, *Boritzer v. Boritzer*, 137 A.D.2d 477 (2d Dep't 1988);  A party's domicile, *Weiss v Weiss*, 29 Misc. 3d 1202(A) (2010).

This rule does not preclude a court from conducting an evidentiary hearing. Rather, and in keeping with accepted notions of due process, hearings are conducted when necessary to resolve factual disputes. *See Sharon v. Sharon*, 147 Misc. 2d 665 (1990).

In this case, Plaintiff filed a motion to suppress that was controverted by Kassenoff.  The matrimonial court entertained argument but did not conduct any fact-finding with respect to the underlying factual issues. Instead, it issued a summary order derived solely from the affidavits filed.  The fact that this order is now the subject of an appeal does not alter the fact that the matrimonial court simply conducted a "trial by affidavit".

The suppression motion presented significant mixed issues of law and fact that the matrimonial court side-stepped. First, it denied Plaintiff's request for discovery on issues central to the motion, such as, Plaintiff's purported consent or authorization to the eavesdropping as well as the disclosure of such communications. Similarly, no technical evidence was adduced that addressed whether the communications at issue had been intercepted while in transmission or obtained from storage.

The absence of an adequate evidentiary hearing has warranted the rejection of the collateral estoppel defense. *See Deliz v. Davis,* 66 Misc.3d 299 (N.Y. Sup. Ct. 2019) (hearing limited to the presentation of "one witness" in determining no full and fair opportunity to litigate was afforded); *Gilberg v. Barbieri,* 53 N.Y.2d 285, 294 (1981) (the nature of the available forum, City Court versus Supreme Court, imposed practical limits on the ability of the defendant to fully litigate his liability.)

Aside from the question of permitting access to evidence through discovery or outside experts, Plaintiff was not afforded any opportunity to call witnesses or to cross-exam Kassenoff, an apparent violation of *Uniform Civil Rules for the Supreme Court and the County Court §*

15

*202.20-i* (22 NYCRR §202.20-i) which expressly reserves the right to cross-examine any witness whose direct testimony has been submitted by affidavit.

This court should recognize that deficiencies of this magnitude deprived Plaintiff of "a full and fair opportunity for litigation in the prior proceeding". *See Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.,* 620 F.3d 146, 150 (2nd Cir. 2010) ("constitutional guarantees of procedural due process generally require 'that a deprivation of life, liberty, or property be preceded by notice and opportunity for a hearing appropriate to the nature of the case").

Collateral estoppel does not apply to this case.

2. *There Has Been No Final Adjudication on the Merits*

As addressed earlier, a final judgment on the merits does not exist thereby implicating the fourth prong of the collateral estoppel doctrine.

"Both res judicata and issue preclusion contemplate the existence of a final judgment by the highest court to have considered the case. . ." *PCH Associates, In re*, 949 F.2d 585 (2nd Cir. 1991). Not only do the above issues remain part of an active and ongoing divorce action, but they are also *sub judice* before the Appellate Division, Second Department, with oral argument expected in the Fall of 2022. *See Allan Kassenoff v. Catherine Kassenoff,* 2020-06187.

It is well-settled that finality on the merits "turns upon such factors as the nature of the decision . . ., the adequacy of the hearing, and the opportunity for review." *See Ali v. Mukasey,* 529 F.3d 478, 489 (2nd Cir. 2008); *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2nd Cir. 1961). These important factors make clear that "finality" "on the merits" does not exist in this case.

16

## V.      CONCLUSION

Defendants fail to advance any meritorious arguments warranting the dismissal of the Complaint.  The matrimonial action has not concluded and the issue of how the electronic communications are to be handled for purposes of the final trial remains an issue to be decided on appeal.

The matrimonial court engaged in "trial by affidavit" and did not adhere to the requirements of 22 NYCRR §202.20-i guaranteeing the right of cross-examination. Moreover, it lacked the ability to grant the specific relief sought in this proceeding.

Finally, factually, and procedurally, any question regarding the timeliness of the Plaintiff's lawsuit cannot be adjudicated on the papers at this time. What Plaintiff knew or appreciated with respect to her claims of interception and unauthorized access and when she knew it are properly presented in the complaint and evidence a timely filing.

Defendants' motion to dismiss must be denied.

_____
Harold R. Burke
Law Offices of Harold R. Burke
P.O. Box 4078
Greenwich, Connecticut 06831
Telephone:     (203) 219-2301
Facsimile:      (203) 413-4443
E-Mail:          hrb@burke-legal.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 19, 2022  I caused an electronic copy of

the Plaintiff's Memorandum of Law a to be electronically filed with the United States District

Court for the Southern District of New York using the CM/ECF system, which will

automatically send notifications of such filing to counsel of record.


Dated:  August 19, 2022

_____
Harold R. Burke

18