UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATHERINE KASSENOFF,

    Plaintiff,

                    v.

ALLAN KASSENOFF,
CONSTANTINE G. DIMOPOULOS, AND
DIMOPOLOUS BRUGGEMANN PC,

    Defendant.

Case No. 7:22-cv-02162-KMK

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...............................................................................................................1

II. PLAINTIFF'S CLAIMS UNDER 18 U.S.C. § 2511 (COUNT 1) OR 18 U.S.C. § 2701 (COUNT 2) ARE TIME BARRED ............................................................................4

III. PLAINTIFF'S ENTIRE COMPLAINT MUST BE DISMISSED UNDER THE DOCTRINE OF RES JUDICATA ....................................................................................9

ACTIVE 58098613v13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bannon v. Bannon*,
   270 N.Y. 484 (1936) ...................................................................................................................9

*Conn. Gen. Life Ins. Co. v. Biohealth Labs., Inc.*,
   988 F.3d 127, 131-32 (2d Cir. 2021) ........................................................................................4

*Dellutri v. Vill. of Elmsford*,
   895 F. Supp. 2d 555 (S.D.N.Y. 2012) .......................................................................................8

*Demuth v. U.S. Small Bus. Admin.*,
   819 Fed. Appx. 23 (2d Cir. July 7, 2020) ..................................................................................8

*Doe v. State Univ. of N.Y. Purchase Coll.*,
   2022 WL 2972200 (S.D.N.Y. July 27, 2022) ............................................................................8

*Flournoy v. Flournoy*,
   155 Misc. 2d 510 (N.Y. Sup. Ct. 1992) ....................................................................................9

*Fultz v. Gilliam*,
   942 F.2d 396 (6th Cir. 1991) .....................................................................................................7

*Gonzalez v. Hasty*,
   802 F.3d 212 (2d Cir. 2015) ......................................................................................................8

*Herkovitz v. Klein*,
   2011 N.Y. Misc. LEXIS 1237 (N.Y. Sup. Ct. Mar. 21, 2011) ................................................10

*Konigsberg v. Lefevre*,
   267 F. Supp. 2d 255 (N.D.N.Y. 2003) ......................................................................................8

*Maharam v. Maharam*,
   575 N.Y.S.2d 262 (1st Dep't 1991) .........................................................................................10

*Paar v. Bay Crest Ass'n*,
   2014 N.Y. Slip Op. 30389 (N.Y. Sup. Ct. Feb. 6, 2014) .........................................................10

*Rivas v. N.Y. State Lottery*,
   745 Fed. Appx. 192 (2d Cir. Dec. 18, 2018) .............................................................................9

*Santucci v. Levine*,
   2019 WL 3742286 (S.D.N.Y. Aug. 8, 2019) .............................................................................8

*Sewell v. Bernardin*,
   795 F.3d 337 (2nd Cir. 2015) ....................................................................................................6

*Sloth v. Constellation Brands, Inc.*,
   883 F. Supp. 2d 359 (W.D.N.Y. 2012) ......................................................................................8

*Spoleto Corp. v. Ethiopian Airlines Grp.*,
  2022 WL 329265 (S.D.N.Y. Feb. 3, 2022)...............................................................................12

*Weslowski v. Zugibe*,
  14 F. Supp. 3d 295 (S.D.N.Y. 2014).........................................................................................8

**I.      INTRODUCTION**

There can be no mistaking the fact that Ms. Kassenoff suffers from mental illness. Dr. Marc Abrams, the neutral forensic therapist appointed by the Court in the Matrimonial Action, concluded that she has a personality disorder with narcissistic and sadistic tendencies.[1] Similarly, both Judge Koba and Judge Lubell stated as much from the bench. For example, Judge Koba explained as follows during a June 2, 2021 hearing:

> This is the problem as I see it: I have an obligation to act in the best interest of the children. And while – the Court made findings a year ago after a ten-day hearing, and the Court believes, based upon the evidence deduced during that hearing, that ***Ms. Kassenoff does have a mental illness that's impacting her interactions with the children***, okay. And I understand the children are reacting to that.

(Ex. 13 at 60 (emphasis added)).[2] Presumably due to her mental illness, Ms. Kassenoff abused the oldest Kassenoff child for years and then manipulated all three children throughout this divorce, including, for example, by telling them to lie about their father. It was because of these actions (and many more like them) that led the Matrimonial Court to only permit Ms. Kassenoff to see her children for a few hours per week, *always* with a therapeutic supervisor present. In fact, Judge David Everett, the first judge in the Matrimonial Action, stated on the record that Ms. Kassenoff cannot be around the children without supervision even "for a few minutes":

> THE COURT:     All right. Since this record will be so-ordered, I just want to make it very clear that, Ms. Most, please be sure to communicate to each of the people on the risks of supervising visits that *the children are not to be alone in the presence of Mrs. Kassenoff* –
> MS. MOST:     Okay.
> THE COURT:     – during the period of time that they are supervising the visits.
> MS. MOST:     Okay.

---

[1] In sum and substance, Dr. Abrams found that, due to the disorders suffered by Ms. Kassenoff, she is unable to place any blame on herself for her current predicament and, instead, blames everyone around her.

[2] All exhibits are attached to the Declaration of Allan A. Kassenoff filed concurrently herewith.

1

```
MR. DIMOPOULOS:  Your Honor, if I –
THE COURT:       For any period of time whatsoever.  Yes?
MR. DIMOPOULOS:  If that concludes that part of our discussion, I'd like to just
                 bring up one brief thing just for clarification.  Do we need to
                 say anything more –
MS. MOST:        Dr. Ravitz.
MR. DIMOPOULOS:  Yeah, so we're transitioning, okay, so we can cut there for –
THE COURT:       Just so it's clear, when I say any – at any time I mean even
                 for a few minutes. It has to be –
MS. MOST:        I get it.
THE COURT:       It has to be constant.
```

(Ex. 14 at 17-18 (emphasis added)).

Rather than addressing and dealing with her own documented mental illness, Ms. Kassenoff's divorce "strategy" is to falsely claim that she is a victim of domestic violence and that her children are victims of child abuse, all at the hands of Mr. Kassenoff. Pursuant to this "strategy," Ms. Kassenoff submitted a 14-page Affidavit (Dkt. 35) in conjunction with her Memorandum of Law In Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint (Dkt. 34, the "Opposition"), purporting to detail the "abuse" she claims to have suffered. However, none of the Plaintiff's allegations of abuse are even remotely true.[3] To wit, Ms. Kassenoff tried peddling the same lies to the Matrimonial Court, which saw Ms. Kassenoff's allegations for what they are (lies) and awarded Mr. Kassenoff sole legal and physical custody of the parties' three children following a two-week trial in July 2020 and limited Ms. Kassenoff to only therapeutically supervised visits with the children. (Dkt. 31-1 at 43-44). Judge Koba's Order following the trial also prohibited Ms. Kassenoff from *any* non-therapeutically supervised access or communications with the children. (*Id.* at 44). Tellingly, those restrictions continue to this day.

---

[3] Defendants could easily refute all of the allegations in Plaintiff's Affidavit, including supplying videos of Plaintiff's abuse of the children. In fact, the Defendants have done exactly that in the Matrimonial Action which is why Mr. Kassenoff has had sole legal and physical custody of the children for over 2 ½ years while the Plaintiff is still restricted to therapeutically supervised access.

Plaintiff also presented these same "factual" allegations to all of the other professionals involved in the Matrimonial Action – none of whom believed her – including Carol Most (the Attorney for the Children), Dr. Susan Adler (two of the Kassenoff children's therapist), Dr. Carolyn McGuffog (the therapist for the third Kassenoff child), and Dr. Abrams. Like Judge Koba, all of these professionals saw Ms. Kassenoff's allegations for what they are (lies).[4]

Putting aside the fact that the allegations in Plaintiff's Affidavit are false, none of those purported "facts" (even if true) bear any relevance to Defendants' Motion to Dismiss. Try as she might, the Plaintiff cannot avoid the plain and simple fact that her claims under 18 U.S.C. § 2511 (the "Wiretap Act") and 18 U.S.C. § 2701 (the "Stored Communications Act" or "SCA") were brought after their two-year statute of limitations had run and thus must be dismissed. Furthermore, Plaintiff cannot dispute that (i) she has already brought a motion in the Matrimonial Action based upon the *identical series of facts* that form the basis of the instant Action (Dkt. 31-3) and (ii) Judge Koba has fully adjudicated her claim, denying the motion in its entirety (Dkt. 31-5). Accordingly, all of Ms. Kassenoff's claims in this Action are also barred under the doctrine of res judicata. Finally, Plaintiff did not even bother responding to the Defendants' arguments explaining why Plaintiff's trespass to chattels claim fails as a matter of law. That claim must be dismissed for this additional reason. For all of these reasons and as demonstrated in the Memorandum Of Law In Support Of Defendants' Motion To Dismiss Plaintiff's Complaint Under

---

[4] As explained in Defendant's Opening Brief, Ms. Kassenoff is seeking to exact revenge upon each and every person involved in the Matrimonial Action that she believes led to the loss of her children. In addition to the lawsuits and complaints listed in footnote 1 of Defendants' Opening Brief, Ms. Kassenoff has since filed a *third* complaint against Ms. Most with the Second Department's Office of Attorneys for Children as well as a complaint against Dr. McGuffog with the State Board of Education. Further, Ms. Kassenoff is now threatening the Defendants with a *third* lawsuit. (Ex. 15 ("I will also likely bring a federal lawsuit for the false arrest and conspiracy to deprive me of my parental rights that you orchestrated with [Ms. Most].")).

Fed. R. Civ. P. 12(b)(6) (Dkt. 31, "Opening Brief") and further below, Defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety.

## II. PLAINTIFF'S CLAIMS UNDER 18 U.S.C. § 2511 (COUNT 1) AND 18 U.S.C. § 2701 (COUNT 2) ARE TIME BARRED

Although disjointed, Plaintiff seems to be making three arguments as to why her claims under 18 U.S.C. § 2511 and 18 U.S.C. § 2701 are not barred by their respective two-year statutes of limitations,[5] none of which have any merit.  ***First***, Plaintiff (falsely) argues that she "did not know how she had been aggrieved *until March 16, 2020* and only discovered this after she received and read the papers Kassenoff filed with the matrimonial court." (Opp'n at 4 (emphasis added)). But, as set forth in Defendants' Opening Brief, Ms. Kassenoff has known of the alleged facts supporting these claims – namely, Mr. Kassenoff's access to some of her text messages via the synchronization of Ms. Kassenoff's iPhone with the parties' joint laptop – at least as of June 5, 2019 (nearly three years before she filed the instant Complaint).

Specifically, according to Plaintiff's Complaint, the factual basis for both her Wiretap Act and Stored Communications Act claims is as follows:

> 19. Defendant continued to use Plaintiff's Apple ID and Password in other ways, including to "sync" Plaintiff's iPhone with the Laptop. . . .
>
> 20. After the syncing of Plaintiff's iPhone with the Laptop, Defendant accessed and intercepted Plaintiff's text message communications over the course of several years, an activity that Defendant has admitted to doing. . . .

(Dkt. 3 at ¶¶ 19-20). But, as set forth in Defendants' Opening Brief (and seemingly ignored by the Plaintiff), Mr. Kassenoff filed a motion in the Matrimonial Action on June 5, 2019, seeking,

---

[5] "'Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.'" *Conn. Gen. Life Ins. Co. v. Biohealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) (quoting *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

4

*inter alia*, temporary sole legal and physical custody of the parties' children. (Dkt. 31-9). In his affidavit in support of the motion, Mr. Kassenoff explained that "[b]ecause Catherine's Apple ID was associated with our laptop for years, [he] was able to see her text messages. . . ." (Dkt. 31-11 at ¶¶ 15-16). Furthermore, as also explained in the Defendants' Opening Brief, *Ms. Kassenoff herself* filed a motion in the Matrimonial Action based upon Mr. Kassenoff's alleged "interception" of her text messages on March 9, 2020 (Dkt. 31-3) – more than two years before she filed the instant Complaint on March 16, 2022. How can the Plaintiff possibly claim that she was unaware of her claims under the Wiretap Act and Stored Communications Act until March 16, 2020 (Opp'n at 4) when she herself filed a motion in the Matrimonial Action on March 9, 2020 for alleged violations of those *exact statutes* based upon the *exact same facts*!

**Second**, Plaintiff seems to be arguing that the two-year statute of limitations should not begin to run until March 16, 2020 when "[Mr.] Kassenoff revealed how he had obtained Plaintiff's otherwise private and confidential communications." (Opp'n at 5). Specifically, according to the Plaintiff, "absent knowledge that her password had been compromised, Plaintiff never had notice of her potential claims." (*Id.* at 6). But, neither 18 U.S.C. § 2520(e) nor 18 U.S.C. § 2707(f) provide that the statute of limitations only begins to run when a potential plaintiff learns every single detail of a purported violation. To the contrary, both statutes provide that the statute of limitations begins to run when "the claimant first discovered *or had a reasonable opportunity* to discover the violation." 18 U.S.C. § 2707(f) (emphasis added); *see also* 18 U.S.C. § 2520(e).

In the instant case, there can be no doubt that Ms. Kassenoff "first discovered . . . the violation" when Mr. Kassenoff informed her on June 5, 2019 that he "was able to see her text messages" as Ms. Kassenoff's "Apple ID was associated with our laptop for years." (Dkt. 31-11 at ¶¶ 15-16). Faced with this indisputable fact, Plaintiff argues that, despite this knowledge, the

5

statute of limitations did not begin to run *until* she learned that her password had been compromised: "In *Sewell v. Bernardin* [the Second Circuit] noted that it was not until Sewell became aware that 'her password had been "altered"' that the statute of limitations began to run." (Opp'n at 6). But, the *Sewell* Court held no such thing. To the contrary, the Second Circuit quoted 18 U.S.C. § 2707(f) and then explained that provision as follows:

> In other words, the limitations period begins to run when the plaintiff discovers that, *or has information that would motivate a reasonable person to investigate* whether, someone has intentionally accessed the "facility through which an electronic communication service is provided" and thereby obtained unauthorized access to a stored electronic communication.

795 F.3d 337, 340 (2nd Cir. 2015) (quoting 18 U.S.C. § 2701(a)) (emphasis added). Nowhere did the *Sewell* Court hold that the knowledge of a password being compromised is necessary to "motivate a reasonable person to investigate" a potential claim. Rather, the Court concluded that the fact that the plaintiff had discovered that her AOL account had been compromised on August 1, 2011 (more than two years before she filed suit) did not provide her "with a reasonable opportunity to discover" that the defendant had *also* breached her Facebook account on that date when she did not learn of that breach until February 24, 2012 (i.e., within two years of filing her complaint on January 2, 2014). *Id.* at 340-41. Accordingly, the Court held that the plaintiff's claims as to Facebook were timely filed. *Id.* at 338.

**Third**, the Plaintiff takes the inconsistent position that, on the one hand, "each interception, acquisition, publication, use or disclosure of a protected communication constitutes a separate violation of the Wiretap Act or SCA" while, on the other hand, "under the continuing violation doctrine, 'the statute of limitations period may be delayed until the last act' complained of." (Opp'n at 6, 7 (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2nd Cir. 2001)). As an initial matter, Defendants acknowledge that, under the SCA, each unlawful access of a person's stored communications can constitute a separate violation. However, the *only* alleged violations of the

6

SCA took place more than two years before she filed the instant Complaint on March 16, 2022:

> 53.     Upon information and belief, *on diverse days between February 2016 and May 2019*, Defendant violated 18 U.S.C. § 2701(a) by intentionally and repeatedly accessing Plaintiff's electronic communications while said communications were in electronic storage maintained by Apple, Google and/or Yahoo.

(Dkt. 3 at ¶ 53 (emphasis added)).

Similarly, each purported use and disclosure of any allegedly "intercepted" communication constitutes an independent violation of The Wiretap Act. The Complaint, however, alleges only one such use or disclosure within the two-year period preceding the filing of the Complaint: "On or about March 16, 2020, Defendants again republished the Text Messages in a filing in the Divorce Action." (Dkt. 3 at ¶ 33). However, according to the Complaint, those very same Text Messages had been *previously* disclosed to the Matrimonial Court: "On or about September 6, 2019, Defendants again published the Text Messages in submissions to the court in the Divorce Action." (*Id.* at ¶ 31). And, as explained in the Opening Brief (at 14 n.8), "[t]he text of the Wiretapping Act plainly indicates, and its purpose necessitates, that a new and discrete cause of action accrue under section 2511(1)(c) each time a recording of an unlawfully intercepted communication is played to a third party *who has not yet heard it*." *Fultz v. Gilliam*, 942 F.2d 396, 402 (6th Cir. 1991)[6] (emphasis added). Even assuming that the Defendants had published the Text Messages to the Matrimonial Court on March 16, 2020 (i.e., within the statute of limitations period), such disclosure did not accrue a new cause of action as those messages had previously been disclosed to the Court and, thus, did not constitute a disclosure to "a third party who has not yet heard it."

The Plaintiff's attempted reliance on the continuing violation doctrine is equally

---

[6] Curiously, Plaintiff cites the *Fultz v. Gilliam* decision twice in its Opposition (at 6) but fails to address the point raised above (despite Defendants having already raised it in their Opening Brief).

7

unavailing. "The continuing violation doctrine typically arises in the context of a complaint of unlawful workplace discrimination challenged under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). Although some courts have expanded the use of this doctrine beyond the employment discrimination context, this Court has previously noted that the doctrine "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 304-05 (S.D.N.Y. 2014) (Karas, J.) (internal quotation marks omitted); *see also Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 564 (S.D.N.Y. 2012) ("The continuing violations doctrine is generally viewed with disfavor in the Second Circuit and should be applied only on a showing of compelling circumstances."); *Sloth v. Constellation Brands, Inc.*, 883 F. Supp. 2d 359, 370 (W.D.N.Y. 2012) ("Moreover, the 'continuing violation' doctrine is strongly disfavored by courts in this Circuit."); *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 262-63 (N.D.N.Y. 2003) ("A party cannot invoke the doctrine to avoid statute of limitations problems when he knew after each allegedly wrongful act that it was actionable, but chose not to file federal claims regarding them within the limitations period. Few of the attempts to invoke the doctrine are successful and the continuing violation doctrine is disfavored in the Second Circuit.").

In addition to being "heavily disfavored" in the Second Circuit, "[t]he 'continuing violation' rule does not apply to 'discrete unlawful acts, even where those discrete acts are part of a "serial violation."'" *Santucci v. Levine*, 2019 WL 3742286, at *8 (S.D.N.Y. Aug. 8, 2019) (quoting *Gonzalez*, 802 F.3d at 220); *see also Doe v. State Univ. of N.Y. Purchase Coll.*, 2022 WL 2972200, at *9 (S.D.N.Y. July 27, 2022) (Karas, J.) (same); *Demuth v. U.S. Small Bus. Admin.*, 819 Fed. Appx. 23, 26 n.2 (2d Cir. July 7, 2020) ("[T]he continuing violation doctrine does not apply to discrete acts."). In short, "the continuing violation doctrine does not apply to discrete

8

unlawful acts, even if the discrete acts were undertaken 'pursuant to a general policy that results in other discrete acts occurring within the limitations period.'" *Rivas v. N.Y. State Lottery*, 745 Fed. Appx. 192, 193 (2d Cir. Dec. 18, 2018) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012)).  In the instant case, there can be no doubt that the doctrine does not apply as each and every purported violation of The Wiretap Act or the SCA constitutes a "discrete" violation, a fact readily conceded by the Plaintiff: "each interception, acquisition, publication, use or disclosure of a protected communication constitutes *a separate violation* of the Wiretap Act or SCA." (Opp'n at 6 (emphasis added)).  Because the two-year statutes of limitations had long since expired prior to the filing of the Complaint, Plaintiff's claims under 18 U.S.C. § 2511 (Count 1) and 18 U.S.C. § 2701 (Count 2) must be dismissed.

### III. PLAINTIFF'S ENTIRE COMPLAINT MUST BE DISMISSED UNDER THE DOCTRINE OF RES JUDICATA

Plaintiff first argues that res judicata does not apply as Judge Koba's Order did not constitute a final decision and res judicata does not apply to interlocutory orders. (Opp'n at 9-10 (citing *Bannon v. Bannon*, 270 N.Y. 484, 489 (1936)).  However, as the *Bannon* Court explained:

> The scope of the words "final judgment," it is true, should not be confined to a final judgment in an action. *They may include any judicial decision upon a question of fact or law which is not provisional and subject to change and modification in the future by the same tribunal. . . . The same result follows, at times, from an order entered upon a motion in an action*, at least where the motion is made for relief *which from its nature cannot be provisional or interlocutory*.

270 N.Y. at 489-90 (emphasis added).  And, in *Bannon*, the issue previously decided dealt with alimony *pendente lite*, which the court noted was "provisional" and "subject to modification or change." *Id.* at 491-93; *see also Flournoy v. Flournoy*, 155 Misc. 2d 510, 512 (N.Y. Sup. Ct. 1992) ("A pendente lite order by its very nature is temporary."). Moreover, the *Bannon* holding is consistent with the litany of cases cited in Defendants' Opening Brief (at 15-16) – apparently ignored by Plaintiff – holding that "[w]here the dispositive directive is in the nature of an order

9

rather than a judgment (such as a motion for summary judgment), the order will nonetheless be given preclusive effect if the doctrinal pre-requisites for *res judicata* are satisfied." *Paar v. Bay Crest Ass'n*, 2014 N.Y. Slip Op. 30389, at *2 (N.Y. Sup. Ct. Feb. 6, 2014), *aff'd*, 140 A.D.3d 1137 (2d Dep't 2016). Because Judge Koba's Order was final (i.e., not provisional or subject to modification or change), res judicata applies.

Plaintiff also argues that the doctrine should not apply to Mr. Dimopoulos as he "cannot be bound by any final determinations that a state matrimonial court may enter." (Opp'n at 10). However, Plaintiff conveniently ignores that she did in fact assert claims against him and even sought judicial relief against him in that case. (Dkt. 31 at 4-5). Moreover, even if res judicata did not preclude Plaintiff from asserting her claims against Mr. Dimopoulos, those claims must still be dismissed against him as they were filed after their two-year statutes of limitations had expired.

To the extent Plaintiff argues that res judicata cannot apply as "the Matrimonial Court cannot provide full relief," (Opp'n at 11-12), Plaintiff is incorrect. It is well-settled that "[p]arties are free . . . to join their interspousal tort claims with the matrimonial action . . . ." *Herkovitz v. Klein*, 2011 N.Y. Misc. LEXIS 1237, at *14 (N.Y. Sup. Ct. Mar. 21, 2011), *aff'd*, 91 A.D.3d 598 (2nd Dep't 2012)[7]; *see also Maharam v. Maharam*, 575 N.Y.S.2d 262, 263-64 (1st Dep't 1991) (agreeing with the trial court "that a joint trial be held" on the divorce "and monetary damages resulting from defendant's allegedly having transmitted [genital herpes] to her").[8]

---

[7] The fact that Judge Koba declined to consolidate an unrelated tort action that the Plaintiff had filed against the Defendants in Brooklyn (Opp'n at 12) has no bearing on whether or not the court could have provided "full relief" on Plaintiff's instant claims.

[8] Defendants refer the Court to their Opening Brief (at 17-19) explaining why collateral estoppel applies to Counts 1 and 4. Plaintiff's arguments in response are either the same as what she alleged as to res judicata (e.g., there was no final judgment) or criticisms of Judge Koba's decision (e.g., "trial by affidavit"; no evidentiary hearing). However, even if Plaintiff's criticisms were legitimate (they are not), they merely form the basis of an appeal – they do not permit Ms. Kassenoff to file an entirely new action, asserting the identical claims, in a different court.

Dated: September 15, 2022　　　　　　　　Respectfully submitted,

By: */s/ Allan Kassenoff*
Allan Kassenoff, Esq.
161 Beach Avenue
Larchmont, NY 10538
kassenoffa@gtlaw.com
(917) 623-8353

By: */s/ Gus Dimopoulos*
Gus Dimopoulos, Esq.
DIMOPOULOS BRUGGEMANN, P.C.
73 Main Street
Tuckahoe, NY 10707
gd@dimolaw.com
(914) 472-4242

*Pro Se* Defendants

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that, on September 15, 2022, a true and correct copy of the foregoing document was emailed to Temporary_Pro_Se_Filing@nysd.uscourts.gov for uploading to the Court's CM/ECF system, which will send a notice of electronic filing to all parties by operation of the system:

  Harold R. Burke, Esq.
  Law Offices of Harold R. Burke
  P.O. Box 4078
  Greenwich, CT 06830
  Email: hrb@burke-legal.com

  *Attorney for Plaintiff Catherine Kassenoff*

            */s/ Allan Kassenoff*
            Allan Kassenoff