Allan Kassenoff, Esq.
161 Beach Avenue
Larchmont, NY 10538
akassenoff@yahoo.com
(917) 623-8353

July 28, 2023

**VIA ECF**

The Honorable Kenneth M. Karas
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

    Re:    *Catherine Kassenoff v. Allan Kassenoff et al.*
            **Case No. 7:22-CV-002162-KMK (S.D.N.Y.)**

Dear Judge Karas:

I write pursuant to Your Honor's July 21, 2023 endorsement of Mr. Burke's July 20, 2023 letter (Dkts. 62, 63). On May 30, 2023, the Court conducted a premotion conference in connection with Mr. Kassenoff's contemplated motion for sanctions. After being informed during the hearing that Ms. Kassenoff had made a public Facebook post on May 27, 2023 claiming that she was in Switzerland and was going to commit suicide later that day, Your Honor instructed Mr. Burke to find out if his client had in fact committed suicide and, if she had, whether her estate was going to continue the appeal of the Court's March 27, 2023 Opinion & Order dismissing this frivolous action. Now, more than two months later, Mr. Burke has *still* not informed the Court as to the estate's intentions regarding this case.

On June 5, 2023, Mr. Burke notified the Court that he still did not know for sure whether or not Ms. Kassenoff had died and requested that the case be continued for four weeks:

> At this time, I have no reason to suspect or believe that Catherine Kassenoff is alive but I must concede that I cannot verify that she has died. Given the unusual circumstances, I am requesting that this matter be continued for four weeks. In the event that I should discover material information earlier, I will immediately apprise the Court and opposing counsel.

(Dkt. 58). The following day, the Court stayed the case for 4 weeks in order "to allow Mr. Burke to confirm the facts discussed" in his letter. (Dkt 59). One month later, on July 6, Mr. Burke wrote to the Court, explaining that he is "researching the effect of this development [i.e., Ms. Kassenoff's purported suicide] on further proceedings in this matter, as well as the pending appeal, given that all matrimonial proceedings abated upon her death . . . ." (Dkt. 60). But, Mr. Burke again failed to apprise the Court as to whether or not Ms. Kassenoff's estate was going to

1

continue litigating this case. Upon receiving that letter, Your Honor ordered Mr. Burke "to provide a letter to the Court, by 7/20/23, outlining his position on next steps," which would presumably include the estate's intentions regarding the appeal. (Dkt. 61). On July 20, Mr. Burke again wrote to the Court, arguing that "[t]he underlying federal claim, dismissed by this Court, rested upon an interlocutory decision and order of the Westchester Supreme Court which was later upheld on appeal [and that t]here can be no argument that plaintiff's death voids the underlying interlocutory order." (Dkt. 62). As demonstrated below, Mr. Burke's argument is frivolous, lacking any merit whatsoever.

*First*, Mr. Burke fails to cite *any* authority for the proposition that Judge Koba's July 11, 2020 Decision and Order (the "July 11 Order"), which was affirmed by the Appellate Division, Second Department on February 15, 2023, is somehow "void[ed]" as a result of Ms. Kassenoff's death. The reason for such failure is obvious – no such authority exists. Instead, Mr. Burke cites three cases, none of which is even remotely applicable. Two of the cases cited by Mr. Burke – *Forgione v. Forgione*, 231 A.D.2d 603, 647 N.Y.S.2d 811 (2d Dep't 1996) and *Bannon v. Bannon*, 270 N.Y. 484, 490 1 N.E.2d 975 (1936) – deal with pendente lite orders which are, by definition, only applicable during the pendency of the suit. *See, e.g., Winterberg v. Lupo*, 300 N.J. Super. 125, 133 (App. Div. 1997) ("The textbook definition of pendente lite is 'during litigation.'") (quoting *Black's Law Dictionary* 1290 (4th ed. 1968)). Thus, an abatement or other dismissal of a case would necessarily terminate such a pendente lite order. *See, e.g., Flournoy v. Flournoy*, 155 Misc. 2d 510, 512 (N.Y. Sup. Ct. 1992) ("A pendente lite order by its very nature is temporary."); *see also Milbauer v. Milbauer*, 54 Conn. App. 304, 309 (Conn. App. Ct. 1999) ("[p]endente lite orders, by their very definition, are orders that continue to be in force during the pendency of a suit, action, or litigation. Ballentine's Law Dictionary (3d Ed.) 1969. Pendente lite orders necessarily cease to exist once a final judgment in the dispute has been rendered because the purpose is extinguished at that time."). Conversely, Judge Koba's July 11 Order was *not* an order that would only last during the pendency of the suit. Rather, it was a final decision that was affirmed on appeal. As such, there is simply no legal basis to even argue that Judge Koba's July 11 Order was "void[ed]" as a result of Ms. Kassenoff's suicide.[1]

*Second*, this Court has previously rejected Mr. Burke's argument that Judge Koba's July 11 Order was not a final decision. Specifically, as this Court explained in its March 27, 2022 Opinion & Order granting Defendants' Motion to Dismiss, "Plaintiff argues that res judicata should not apply because no final judgment has been entered in the Divorce Action." (Dkt. 45 at 8). This Court properly rejected that argument, noting that not only was the July 11 Order a final decision, but it was even affirmed by the Appellate Division. (*Id.* at 12). Moreover, the Court expressly distinguished the *Bannon* case in its Opinion & Order:

> Plaintiff raises two challenges, both of which are without merit. *First, Plaintiff argues that an order from an ongoing matrimonial proceeding is not a final judgment*, so res judicata does not apply. (Pl's Opp'n at 11-12.) However, the

---

[1] The third case cited by Mr. Burke – *People v. Evans*, 94 N.Y.2d 499, 727 N.E.2d 1232 (2000) – has even less relevance than *Forgione* and *Bannon* to the instant facts. In *Evans*, the NY Court of Appeals held that the law of the case doctrine does not apply to a first judge's determination following a Sandoval hearing when that case resulted in a hung jury and was to be retried in front of a second judge.

> cases Plaintiff cites in support of her position are inapposite, as they dealt with factually distinguishable circumstances. *See Bannon*, 1 N.E.2d at 977-79 (holding that referee's preliminary determination that plaintiff in a divorce action was not married to defendant was not a decision entitled to res judicata in determining whether plaintiff was entitled to spousal support during pendency of the same divorce action).

(*Id.* at 13 (footnote omitted) (emphasis added); *see also id.* at 13 n.6 ("The Court notes that Plaintiff's argument is belied by her own decision to appeal the County Court's order to the Second Department, which indicates to this Court that she believed that the order was a final adjudication on the merits of these claims.")). In short, the Court agreed with Defendants that the July 11 Order was a final decision and, thus, res judicata was applicable: "Defendants argue that res judicata applies because the County Court adjudicated the exact same dispute on the same facts against the same parties and reached a judgment on the merits. *The Court agrees*." (*Id.* (citation omitted) (emphasis added)).

Even more problematic, however, is the fact that, despite being asked nearly two months ago, Mr. Burke has again failed to provide the estate's "position on next steps" regarding this case. But, regardless of whether or not Ms. Kassenoff's estate will continue this frivolous action, Mr. Kassenoff respectfully requests that he immediately be given permission to file his motion for sanctions. As explained in Defendants' March 28, 2023 premotion conference letter, Plaintiff filed this action in bad faith and for the improper purpose of harassment. (Dkt. 47). As will be detailed in Mr. Kassenoff's upcoming motion for sanctions, Plaintiff's behavior in this action is simply one piece of a much broader pattern of harassing him, including but not limited to the following:

(1) Ms. Kassenoff filed a Complaint against Defendants in Kings County on November 13, 2020, seeking over $1 million, plus punitive damages;

(2) Ms. Kassenoff filed a Complaint against Defendants in New York County on March 16, 2023, seeking an award of $13.5 million;

(3) Ms. Kassenoff filed two grievances against Mr. Kassenoff with the Attorney Grievance Committee of the First Judicial Department;

(4) Ms. Kassenoff filed a Petition for Writ of Habeas Corpus against Mr. Kassenoff with the Supreme Court, Westchester County; and

(5) Ms. Kassenoff served an incredibly broad subpoena on Mr. Kassenoff's then employer, seeking a "vast shopping list of material" for use in her lawsuit against Dr. Susan Adler, the children's therapist.

Moreover, Plaintiff's harassment still continues. As explained above, Ms. Kassenoff made a public Facebook post on May 27, 2023, ***falsely*** accusing Mr. Kassenoff of abusing her and the

children and *falsely* claiming to have "a new, terminal health issue [as she] was recently diagnosed with a virulent and life-ending cancer"[2] in order to gain public sympathy.

Then, a few days after Ms. Kassenoff made her post, Mr. Robert Harvey, a TikTok "influencer" with over 3,000,000 followers, started a "smear" campaign designed to destroy Mr. Kassenoff (in addition to Mr. Dimopoulos and everyone else associated with the matrimonial action). Upon information and belief, Ms. Kassenoff was in contact with Mr. Harvey prior to her death in order to coordinate their attacks of Mr. Kassenoff. Shortly after Ms. Kassenoff's May 27 Facebook post, Mr. Harvey began to spread vicious lies about Mr. Kassenoff, including, for example, *falsely* telling his 3,000,000 followers that both Child Protective Services (CPS) and the Larchmont police concluded that Mr. Kassenoff abused his wife and children but that Mr. Kassenoff still got custody because he "paid off" all of the matrimonial judges and both neutral forensic evaluators. But that was not enough for Mr. Harvey. He demanded vigilante justice and instructed his "mob" to bombard Greenberg Traurig with constant emails and phone calls demanding that Mr. Kassenoff be fired. When that plan did not achieve his goal, he next instructed his mob to attack Greenberg Traurig clients, including Samsung. At that point, as a result of Ms. Kassenoff's and Mr. Harvey's coordinated attack, Mr. Kassenoff had to resign from his employment at Greenberg Traurig despite being the sole provider for his three young children.[3]

Accordingly, Mr. Kassenoff respectfully requests the opportunity to take limited discovery from Memorial Sloan Kettering Cancer Center ("MSKCC") and Mr. Harvey in order to further demonstrate Ms. Kassenoff's pattern of harassment and, thus, support an award of sanctions. Specifically, Mr. Kassenoff seeks to subpoena (i) Ms. Kassenoff's medical records from MSKCC to confirm what Dr. Gajria previously told him – namely, that Ms. Kassenoff lied about having terminal cancer and (ii) all communications between Mr. Harvey and Ms. Kassenoff (or any representative of Ms. Kassenoff) to demonstrate the conspiracy between Mr. Harvey and Ms. Kassenoff. This limited information is relevant to Mr. Kassenoff's contemplated motion for sanctions as Ms. Kassenoff falsely claimed to be suffering from terminal cancer and then, upon information and belief, coordinated with Mr. Harvey (and his 3,000,000 followers) for the sole purpose of destroying Mr. Kassenoff. Mr. Kassenoff therefore respectfully requests that the Court enter the following schedule:

- Mr. Kassenoff serves subpoenas on MSKCC and Mr. Harvey within 2 weeks of a schedule being entered.

---

[2] Mr. Kassenoff recently spoke to Ms. Kassenoff's oncologist, Dr. Devika Gajria of Memorial Sloan Kettering Cancer Center, who confirmed that Ms. Kassenoff did *not* have cancer (let alone terminal cancer) when she had her most recent annual appointment in November 2022.

[3] As of the date of this letter, Mr. Kassenoff remains unemployed.

- Mr. Kassenoff's opening brief in support of his motion seeking sanctions[4] will be due 6 weeks after MSKCC and Mr. Harvey complete their productions in response to Defendant's subpoenas.

- Plaintiff's opposition brief will be due 4 weeks after Mr. Kassenoff's opening brief.

- Mr. Kassenoff's reply brief will be due 2 weeks after Plaintiff's opposition brief.

Thank you very much in advance.

Sincerely,

/s/ *Allan Kassenoff*

Allan Kassenoff

---

[4] Due to the sheer level (and viciousness) of Plaintiff's harassment of Mr. Kassenoff, including but not limited to causing Mr. Kassenoff to lose his job as a result thereof, Mr. Kassenoff respectfully requests 50 pages for his opening brief on sanctions.