UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATHERINE KASSENOFF,

       Plaintiff,

                 v.

ALLAN KASSENOFF,
CONSTANTINE G. DIMOPOULOS, AND
DIMOPOULOS BRUGGEMANN PC,

       Defendant.

Case No. 7:22-cv-02162-KMK

**DEFENDANT ALLAN KASSENOFF'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR SANCTIONS**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ...............................................................................................1

II.     FACTUAL BACKGROUND .............................................................................3

        A.      The Instant Action...................................................................................3

        B.      Plaintiff's *Other* Harassing Lawsuits Against Defendants ...................10

        C.      Additional Harassing Proceedings Brought By Plaintiff.......................12

III.    LEGAL STANDARD........................................................................................18

IV.     ARGUMENT ...................................................................................................19

        A.      Sanctions Are Appropriate Under Both 28 U.S.C. § 1927 And The Court's
                Inherent Authority..................................................................................19

        B.      Mr. Kassenoff Is Entitled To Legal Fees Despite Proceeding *Pro Se* ...................24

V.      CONCLUSION ...............................................................................................25

*ACTIVE 58098613v13*

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*16 Casa Duse, LLC v. Merkin,*
   2020 WL 2833848 (S.D.N.Y. June 1, 2020) ...............................................24

*Aller v. New York Bd. of Elections,*
   586 F. Supp. 603 (S.D.N.Y. 1984) ...............................................................22

*Capital Bridge Co. v. IVL Techs. Ltd.,*
   2007 WL 3168327 (S.D.N.Y. Oct. 26, 2007) ...............................18, 19, 20

*Carousel Foods of America v. Abrams Co.,*
   423 F. Supp. 2d 119 (S.D.N.Y. 2006)...........................................................24

*Chatham Partners, Inc. v. Fidelity & Deposit Co. of Md.,*
   2001 WL 1262960 (S.D.N.Y. Oct. 1, 2001) ................................................18

*Cohen v. Bane,*
   853 F. Supp. 620 (E.D.N.Y. 1994) ...............................................................21

*Davey v. Dolan,*
   453 F. Supp. 2d 749 (S.D.N.Y. 2006).....................................................20, 21

*Egan v. Huntington Copper Moody & Maguire, Inc.,*
   2105 WL 1631547 (N.D. Ill. Apr. 10, 2105) ..............................................25

*Enmon v. Prospect Capital Corp.,*
   675 F.3d 138 (2d Cir. 2012).........................................................................19

*Garcia De Leon v. N.Y. Univ.,*
   2022 WL 2981367 (S.D.N.Y. July 28, 2022) .........................................18, 19

*Huebner v. Midland Credit Mgmt., Inc.,*
   897 F.3d 42 (2d Cir. 2018).............................................18, 19, 20, 23

*Kassenoff v. Kassenoff,*
   ___ AD3d ____, 2020-06187 (2d Dep't Feb. 15, 2023)................................9

*Knopf v. Esposito,*
   2018 WL 1226023 (S.D.N.Y. March 5, 2018) .......................................24, 25

*Lipin v. National Union Fire Ins. of Pittsburgh,*
   202 F. Supp. 2d 126 (S.D.N.Y. 2002).........................................................21

*Pagnucci v. City of New York,*
   993 F.2d 310 (2d Cir. 1993).........................................................................21

*Pickholtz v. Rainbow Techs., Inc.,*
   284 F.3d 1365 (Fed. Cir. 2002)....................................................................25

*Richard v. Joseph,*
   2023 WL 358924 (E.D. Cal. Jan. 23, 2023) ...............................................25

*ACTIVE 58098613v13*

*Ross v. Baldera*,
    2017 WL 3476065 (D. New Mex. Aug. 11, 2017) ................................................................25

*Scott v. Major*,
    1990 WL 21319 (N.D.N.Y. Mar. 6, 1990) ............................................................................20

*U.S. v. Int'l Bhd. of Teamsters*,
    948 F.2d 1338 (2d Cir. 1991)........................................................................................18, 23

Defendant Allan Kassenoff respectfully submits the following memorandum of law in support of his motion for sanctions against both the Plaintiff, Catherine Kassenoff,[1] and her attorney, Harold Burke, pursuant to 28 U.S.C. § 1927 as well as this Court's inherent powers to supervise and control its own proceedings.  Specifically, Defendant requests monetary sanctions, including but not limited to his attorneys' fees incurred in defending this Action.

## I.   INTRODUCTION

Mr. Kassenoff does not request sanctions lightly.  However, this is not a case where a plaintiff brought a somewhat dubious lawsuit with the hope of getting a large damage award but ultimately lost.  This is not even a case where a plaintiff brought a clearly frivolous action with the hope of the defendant settling rather than fighting the case on its merits.  Instead, as demonstrated below, Plaintiff brought this case in bad faith and for the sole reason of *continuing* her pattern of harassing Mr. Kassenoff.

As explained in Defendants' Motion To Dismiss (Dkt. 31 at 1-3), Plaintiff brought this suit in bad faith – namely, to exact revenge upon Mr. Kassenoff and co-defendant Mr. Dimopoulos (collectively, "Defendants") as a result of her losing custody of her children in the Matrimonial Action.[2]  Even before being served with the Complaint, Mr. Kassenoff informed Plaintiff's counsel, Mr. Burke, that (i) this case was baseless as the asserted claims are all barred under the doctrine of res judicata and (ii) Defendants would "file an immediate motion to dismiss (upon service of the Complaint) and request sanctions and attorney's fees from [him] and [his] client" if

---

[1] Because Ms. Kassenoff committed medically assisted suicide in Switzerland on May 27, 2023, Mr. Kassenoff is seeking sanctions from her estate.  For the purposes of the instant Motion, Ms. Kassenoff and her estate will be treated collectively as "Ms. Kassenoff."

[2] The Matrimonial Action was abated upon Ms. Kassenoff's death.

he refused to withdraw the Complaint.  (Ex. 1)[3] at 4).  Plaintiff and Mr. Burke refused to dismiss the Complaint – even after receiving two more letters further demonstrating the baselessness of Plaintiff's claims – and instead elected to force Mr. Kassenoff to litigate a clearly frivolous action.

That Plaintiff brought this lawsuit to harass is confirmed by the fact that the Plaintiff has not limited her attacks to just Mr. Kassenoff.  Rather, Ms. Kassenoff has gone after each and every person involved in the Matrimonial Action whom (she believes) contributed to her loss of custody, including Judge Nancy Koba, Judge Lewis Lubell, Carol Most (the attorney who had been representing the Kassenoff children in the Matrimonial Action), Dr. Susan Adler (two of the Kassenoff children's therapist), Dr. Carolyn McGuffog (one of the Kassenoff children's therapist) and Dr. Marc Abrams (the original Court-appointed neutral forensic therapist).[4]  Moreover, this Action is not Plaintiff's only (or even first) legal attack on the Defendants.  To wit, on November 13, 2020, Plaintiff sued Defendants in the Supreme Court, Kings County, seeking over $1 million, plus punitive damages, alleging "conversion" of her clothing, personal property and pets. (*Catherine Kassenoff v. Allan Kassenoff et al*, Index No. 522543/2020).  Then, on December 1, 2020, Mr. Kassenoff received a copy of a grievance the Plaintiff had filed against him with the Attorney Grievance Committee of the First Judicial Department, based upon the same facts alleged in the instant Action.  On January 25, 2023, the Plaintiff struck again, filing her ***third*** lawsuit against the Defendants, this time seeking $13.5 million due to her being arrested by the Larchmont

---

[3] All exhibits are attached to the Declaration of Allan Kassenoff ("Kassenoff Decl.") filed concurrently herewith.

[4] Upon information and belief, Ms. Kassenoff has filed (i) judicial complaints against both Judge Koba and Judge Lubell; (ii) at least two complaints against Ms. Most with the Second Department's Office of Attorneys for Children; (iii) a complaint against Dr. McGuffog with the New York State Board of Education; (iv) complaints against Dr. Abrams with the Mental Health Professionals Certification Committee as well as with the NYS Office of Professional Discipline; and (v) a lawsuit against Dr. Adler in the Supreme Court of Westchester County (Index Number 67296/2021).

Police Department in early 2022. (*Catherine Kassenoff v. Allan Kassenoff et al*, Index Number 150761/2023). Finally, on May 17, 2023, Plaintiff filed yet another grievance against Mr. Kassenoff, which was as frivolous as the first.

## II.    FACTUAL BACKGROUND

### A.    The Instant Action

Ms. Kassenoff filed the instant Complaint on March 16, 2022, alleging violations of 18 U.S.C. § 2511 ("The Wiretap Act"); 18 U.S.C. § 2701 ("Stored Communications Act"); trespass to chattels; NY Penal Law Section 250; and seeking temporary and permanent injunctive relief pursuant to 18 U.S.C. § 2520(b) and 18 U.S.C. § 2707(b). (Dkt. 3 at ¶¶ 38-82). According to Plaintiff's Complaint, Mr. Kassenoff "obtained Plaintiff's electronic communications either by intercepting them while they were transiting through her iCloud account or downloaded said communications while stored in Plaintiff's iCloud account." (*Id.* at ¶ 37). This purportedly enabled Mr. Kassenoff to see Plaintiff's "private, confidential, and privileged electronic communications," which "included [Plaintiff's] text and email messages with her attorney, Cynthia Monaco, Esq." (*Id.* at ¶¶ 22-23). But, as demonstrated in Defendants' Motion to Dismiss (Dkt. 31 at 4-8, 16-17) and in this Court's Opinion & Order granting that motion (Dkt. 45 at 11-12), Ms. Kassenoff had already filed a motion in the Matrimonial Action based upon the *identical series of facts* that form the basis of the instant Action. Moreover, Judge Koba – the then presiding judge in the Matrimonial Action – denied that motion in its entirety, holding that Ms. Kassenoff's "assertions that her husband's accessing and taking photographs of her text messages violated [The Wiretap Act and NY Penal Law Section 250] are *wholly without merit*." (July 11, 2020 Decision and Order ("Judge Koba's July 11 Order") at 28 (Dkts. 31-5, 31-6)).[5]

---

[5] All emphasis is added unless otherwise indicated.

In light of the above facts, Defendants informed Plaintiff's counsel that the instant Action was barred under the doctrine of res judicata.  Specifically, on April 9, 2022 – approximately 3 weeks after the Complaint was filed in this Action (but before it was even served) – Mr. Kassenoff sent Plaintiff's counsel, Mr. Burke, a letter demanding dismissal of the Complaint:

> I am writing to you as a *pro se* defendant on behalf of myself and my co-defendants, Constantine G. Dimopoulos and Dimopoulos Bruggemann PC, in response to the baseless Complaint you recently filed in the Southern District of New York on behalf of Ms. Catherine Kassenoff.  As you may know, your client and I are in the midst of an extremely contentious divorce proceeding currently pending in the Supreme Court of Westchester County, *Kassenoff v. Kassenoff*, Index Number 58217/2019 (the "Matrimonial Action").  I am sure that your client failed to inform you that she filed a motion (NYSCEF #314) in the Matrimonial Action premised on the identical set of facts, alleging violations of both New York Penal Law Section 250.05 as well as 18 U.S.C. § 2511.  (*Id.* at 12).  I am equally sure that your client also failed to inform you that Judge Nancy Quinn Koba, the presiding judge in the Matrimonial Action at the time, denied your client's motion in its entirety.  (NYSCEF # 864).  *Mr. Dimopoulos, my co-defendant in this baseless action and my attorney in the Matrimonial Action and I demand that you immediately withdraw the Complaint as **your client's entire claim is barred under the doctrine of res judicata***.

(Ex. 1 at 1) (footnote omitted)).  Mr. Kassenoff continued, providing further information about Ms. Kassenoff's motion in the Matrimonial Action and Judge Koba's denial of that motion:

> On March 9, 2020, Ms. Kassenoff filed a motion in the Matrimonial Action based upon the "same transaction or series of transactions" – namely, my alleged "interception" of her text messages with her friend, Cynthia Monaco.  (NYSCEF #314). . . .  On July 11, 2020, Judge Koba rendered her decision on Ms. Kassenoff's motion in the Matrimonial Action.  (NYSCEF # 864). . . .  [Specifically,] Judge Koba denied Ms. Kassenoff's motion in its entirety and made the following findings:
>
> •  "The text communications between Monaco and [Ms. Kassenoff], who is herself an experienced attorney, do not constitute communications 'between an attorney and a client for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship.'"  (*Id.* at 24).
>
>        *                    *                    *
>
> •  "The ECPA [Electronic Communications Privacy Act, 18 U.S.C. § 2511] creates criminal sanctions against a person who 'intercepts' electronic communications.  The interception must occur contemporaneously with the transmission of the communication.  Similarly,

> Courts interpreting New York's eavesdropping statute have found that it applies to the interception of communications being transmitted and not to stored communications.   Here, there is no evidence the subject text messages were contemporaneously intercepted during transmission."   (*Id.* at 28 (citations omitted)).

(*Id.* at 2-3).

Defendants' letter then summarized why Plaintiff's Complaint was barred under the doctrine of res judicata:

> Because the Supreme Court of New York ("a court of competent jurisdiction") entered a Decision and Order denying Ms. Kassenoff's motion in the Matrimonial Action (i.e., Judge Koba rendered "a judgment on the merits") and because Ms. Kassenoff ("the party against whom the doctrine is invoked") "was a party to the previous action," both requirements of res judicata are met.   Accordingly, Ms. Kassenoff's claims in the instant Complaint are precluded as a matter of law.

(*Id.* at 3-4).

Finally, Defendants warned Mr. Burke of the potential consequences should he and the Plaintiff refuse to withdraw the Complaint: "Alternatively, once we are served with the Complaint, we will file an immediate motion to dismiss and seek sanctions against you and your client for your frivolous filing."   (*Id.* at 1).   If that message was not clear enough, Defendants' letter concluded by reiterating in no uncertain terms that they would be seeking "sanctions and attorney's fees" should he and the Plaintiff continue litigating this baseless Action:

> For all of the foregoing reasons, please confirm by Monday April 18, 2022 that you will be dismissing the Complaint with prejudice. *Should you fail to do so, we will file an immediate motion to dismiss (upon service of the Complaint) and request sanctions and attorney's fees from you and your client.*

(*Id.* at 4).

Neither Plaintiff nor her counsel bothered to respond to Defendants' April 9, 2022 letter, let alone withdraw Plaintiff's frivolous Complaint.   Accordingly, Defendants filed a pre-motion conference letter on May 12, 2022, detailing why the Complaint fails as a matter of law, including, *inter alia*, that "Plaintiff's entire complaint must be dismissed under the doctrine of res judicata"

and that "Plaintiff's claims under the Wiretap Act (18 U.S.C. § 2511) (Count 1) and the Stored

Communication Act (18 U.S.C. § 2701) (Count 2) must both be dismissed as they were brought

after their two-year statutes of limitations had already expired." (Dkt. 22 at 2-3). Furthermore,

Defendants again told Mr. Burke that should he and Plaintiff continue with this baseless lawsuit,

they were doing so at their own risk:

> Finally, as indicated in my April 9 letter, we request that you immediately dismiss
> the Complaint with prejudice. *Should you fail to do so and should the Court permit
> us to file and ultimately grant our motion to dismiss, we will request sanctions and
> attorney's fees from you and your client.*

(*Id.* at 6).

The day after Defendants filed their pre-motion conference letter, on May 13, 2022, Mr.

Burke filed a Consent to Change Attorney to represent Ms. Kassenoff in the pending appeal of

Judge Koba's July 11 Order. (Ex. 2). To the extent Mr. Burke could have previously argued that

he was unaware of Judge Koba's July 11 Order – despite Defendants' April 9 and May 12 letters

and whatever due diligence he performed prior to filing the Complaint – he certainly could no

longer do so once he became Ms. Kassenoff's attorney in the pending appeal.

On May 25, 2022, the Court scheduled a pre-motion conference for June 15, 2022. (Dkt.

25). During the conference, Mr. Burke repeatedly argued that Judge Koba "got it wrong" in

denying Ms. Kassenoff's motion in the Matrimonial Action. (Kassenoff Aff., ¶ 3). The Court,

however, explained (correctly) that even if that were true, Ms. Kassenoff's relief would be to

appeal that decision. (*Id.*) Additionally, during the conference, Ms. Kassenoff falsely claimed

that she did not learn of Mr. Kassenoff's alleged "interception" until March 20, 2020 (i.e., within

the two year statute of limitations for her Wiretap Act and Stored Communication Act claims).

(*Id.* at ¶ 4).

After both sides presented arguments at the pre-motion conference, the Court gave Defendants permission to file their Motion to Dismiss and set a briefing schedule.  (Dkt. 27).  In a final attempt to avoid motion practice, Mr. Kassenoff sent Mr. Burke yet another letter on June 16, 2022, giving him and Plaintiff another chance to dismiss this frivolous lawsuit.  Moreover, Mr. Kassenoff informed Mr. Burke that his client, also a lawyer, lied to the Court during the pre-motion conference in an effort to avoid dismissal of her claims on statute of limitations grounds:

> Perhaps even more concerning is the fact that your client – an NYU Law School graduate with over 25 years of experience – lied to a Federal Judge by stating that she did not learn of my alleged "interception" of her text messages until March 20, 2020, when that is demonstrably false.  As will be made abundantly clear in our upcoming motion to dismiss (should you refuse to dismiss this frivolous action), Ms. Kassenoff knew of the alleged interception at least as of June 5, 2019 when I filed a motion in the Matrimonial Action seeking temporary sole legal and physical custody of our children.  (NYSCEF # 39).  My affidavit in support of that motion quoted from several of the text messages that form the basis of the Complaint in this action and explained how I acquired those text messages. . . .  If that was not clear enough, Ms. Kassenoff filed her motion in the Matrimonial Action seeking various forms of relief, based upon my alleged "interception," on March 9, 2020 – more than two years before you filed the instant action.  (NYSCEF #314).

(Ex. 3 at 1-2).  Defendants also gave Plaintiff and Mr. Burke one final warning as to what would happen should they continue litigating this frivolous Action:

> This is our last offer to you and your client to drop this baseless suit.  Please confirm by **Monday June 20, 2022** that you will be dismissing the Complaint with prejudice.  *Should you fail to do so, we reiterate that we will be filing a motion for sanctions and attorney's fees from you and your client (assuming the Court grants our motion to dismiss) and will be including the above facts in that motion.*

(*Id.* at 2).  Again, Mr. Burke did not even bother responding to Mr. Kassenoff's letter.

Accordingly, on July 1, 2022, Defendants filed their Motion to Dismiss (Dkt. 31).  Plaintiff filed her Opposition on August 20, 2022 (Dkt. 34) and Defendants filed their Reply on September 15, 2022 (Dkt. 38).  Inexplicably, without even seeking leave of the Court, Plaintiff filed an Evidentiary Supplement to Affidavit of Catherine Kassenoff (the "Supplemental Affidavit"), which included 10 exhibits and more than 140 pages, on August 22, 2022 – 3 days after the

deadline for Plaintiff's Opposition (which had already been extended by the Court).  (Dkt. 33).

Later that day, Mr. Kassenoff contacted Mr. Burke, explaining that Defendants did not have access

to Plaintiff's late filing (as the materials were filed under seal) and requested that he "contact the

Court to remove this belated filing immediately."  (Ex. 4).  Mr. Burke responded, attaching copies

of his filing but failed to agree to remove it from the docket and failed to provide an explanation

for why the filing was made after the deadline.  (Ex. 5).  Mr. Kassenoff then responded, again

asking for Plaintiff's "basis for filing this [Supplemental Affidavit] 3 days after your extended

deadline for filing your papers."  (Ex. 6).  Mr. Burke, as seems to be his practice, failed to respond.

Due to Mr. Burke's failure to withdraw Plaintiff's belated Supplemental Affidavit, on

August 23, 2022, Defendants filed a letter requesting that the Court strike the filing from the

docket.  (Dkt. 37).  On November 14, 2022, the Court endorsed Defendants' August 23 letter and

granted Defendants' request.  (Dkt. 40).

On November 9, 2022, Mr. Burke sent a letter to the Court in order "to update the court

with respect to the status of the pending state court appeal referenced by the parties in the pending

motion to dismiss."  (Ex. 7).  As explained by Mr. Burke:

> On October 21, 2022, the Appellate Division for the Second Department of the New
> York Supreme Court entertained oral argument in the matter of *Allan Kassenoff v.
> Catherine Kassenoff*, appeal no. 2020-06187.  This interlocutory appeal stemmed
> from Mr. Kassenoff's alleged acquisition and use of Ms. Kassenoff's electronic
> communications in state court matrimonial proceedings.
>
> The case before your Honor alleges violations of the Electronic Communications
> Privacy Act to which the defendants have asserted *res judicata* and collateral
> estoppel as grounds for dismissal.  Plaintiff posits that a decision in the pending
> appeal will likely address issues or questions bearing on this motion. Should the
> Appellate Division issue an opinion prior to the release of your decision on the
> motion to dismiss, it will be immediately brought to your attention.

(*Id.*)

On February 15, 2023, the Appellate Division, Second Department issued its decision

affirming Judge Koba's July 11 Order, holding that:

> the Supreme Court properly determined that the defendant failed to establish that an attorney-client relationship existed between her and Monaco, and that the subject electronic communications were therefore privileged based on such a relationship.

(*Kassenoff v. Kassenoff*, ___ AD3d ____, 2020-06187 (2d Dep't Feb. 15, 2023) (Dkt. 44-1)).  The Second Department also affirmed Judge Koba's ruling that Mr. Kassenoff did not violate any Federal or State statutes in obtaining the subject electronic communications or using them in the Matrimonial Action, holding that "[t]he defendant's remaining contentions are without merit." (*Id.*)

Despite his promise to "immediately" inform this Court "[s]hould the Appellate Division issue an opinion prior to the release of your decision on the motion to dismiss," Mr. Burke failed to do so.  More disturbing, however, is the fact that even after the Second Department affirmed Judge Koba's holding that Ms. Kassenoff's "assertions that her husband's accessing and taking photographs of her text messages violated the aforementioned statutes are *wholly without merit*," (Dkts. 31-5 at 28, 31-6 at 28), Plaintiff and Mr. Burke **still** did not withdraw the Complaint. Instead, on March 27, 2023, the Court issued its Opinion & Order granting Defendants' Motion to Dismiss based upon the doctrine of res judicata – the very reason that Defendants demanded that Plaintiff and her counsel dismiss this Action since at least April 9, 2022.  (Dkt. 45).  Specifically, in its Opinion & Order, the Court explained that:

> Plaintiff brought a motion in the Divorce Action (the "Divorce Motion") that raised claims against Mr. Kassenoff and Dimopoulos for violations of the ECPA and N.Y. Penal Law § 250 that are largely identical to the claims she asserts before this court. The factual allegations in the Divorce Motion also mirror those in Plaintiff's Complaint in all relevant respects. . . .  *Defendants argue that res judicata applies because the County Court adjudicated the exact same dispute on the same facts against the same parties and reached a judgment on the merits.*  **The Court agrees.**

(*Id.* at 11-12 (citations omitted)).  Accordingly, the Court granted Defendants' Motion to Dismiss:

> The [Matrimonial] Court found that Plaintiff's claims concerning Mr. Kassenoff

and Dimopoulos's conduct were meritless after reviewing the briefing by the parties and the factual record. *Thus, the Court agrees that res judicata bars Plaintiff's Action.* . . .   For the above reasons, the Court grants Defendants' Motion To Dismiss.

(*Id.* at 13, 16 (citation omitted)).

### B.    Plaintiff's *Other* Harassing Lawsuits Against Defendants

As further evidence of Plaintiff's bad faith, this is not the ***first*** time that the Plaintiff has filed suit against Mr. Kassenoff.  On November 13, 2020, Plaintiff sued Mr. Kassenoff and Mr. Dimopoulos, seeking over $1 million, plus punitive damages, alleging "conversion" of her clothing, personal property and pets, in the Supreme Court, Kings County.  (*Catherine Kassenoff v. Allan Kassenoff et al*, Index No. 522543/2020 (the "Kings County Action")).  According to Ms. Kassenoff, the Kings County Action arose "out of the unlawful and intentional withholding of thousands of dollars worth of Plaintiff's personal property, with the intent to inflict extreme emotional harm," alleging that such property remained in the martial residence which Mr. Kassenoff had been awarded exclusive occupancy of when he was awarded temporary sole custody of the children.  (Kings County Action, Complaint, NYSCEF #2 at ¶¶ 1, 17).

On December 23, 2020, Mr. Dimopoulos (on behalf of Mr. Kassenoff and himself) filed an Affirmation in Support of Motion to Dismiss the Kings County Action.  (Kings County Action, NYSCEF #9).  In his Affirmation, Mr. Dimopoulos explained that the Matrimonial Court entered an order on July 17, 2020, governing how Ms. Kassenoff could obtain her personal property from the marital residence.  (*Id.* at ¶ 5).  Pursuant to that Order, Ms. Kassenoff was permitted "to enter the marital residence *under the supervision of and accompanied by a member of the Larchmont Police Department*" to retrieve her property.  (Matrimonial Action, NYSCEF # 866).   Mr. Dimopoulos then explained that shortly after the July 17, 2020 Order was entered, "the Plaintiff-mother visited the Larchmont marital residence to obtain such property.  In addition to that visit,

10

Mr. Kassenoff left certain of Plaintiff's items in the martial [sic] house's garage for the Plaintiff to pick up at the Plaintiff's request and then, several months later, Mr. Kassenoff brought two large bags of Plaintiff's clothing and left it at the house she [was] staying at (again, at the Plaintiff's request)." (Kings County Action, NYSCEF #9 at ¶ 5). In short – and wholly omitted from Ms. Kassenoff's Complaint in that action:

> The Plaintiff mother has been permitted access on all of these occasions to retrieve her belongings and the Defendants in this case have been cooperative at each turn, insisting only, that prior to access, a Court order be entered, and that the Plaintiff enter only with supervision by the Larchmont Police Department (as the Court has repeatedly indicated on the record was a requirement for the Plaintiff's access).

(*Id.* at ¶ 7). Mr. Dimopoulos then concluded by noting that Ms. Kassenoff brought that action solely to harass the Defendants – i.e., the same reason that she brought this Action:

> In short, *this action was initiated solely to harass and annoy the Defendants*. If, however, the Plaintiff truly seeks the relief she does in this action, she can allege these claims in the Divorce Action – which has jurisdiction over those claims.

(*Id.* at ¶ 10).

On February 11, 2021, the Supreme Court, Kings County granted Defendants' motion to dismiss:

> Defendants' motion to dismiss the action pursuant to CPLR § 3211(a)(4) is **GRANTED** to the extent that this action shall be stayed pending a final determination of the action for divorce entitled *Kassenoff v. Kassenoff*, which is pending in Westchester County under Index No.: 58217/19.

(Kings County Action, NYSCEF #13).

The instant case is also not the ***last*** time that the Plaintiff has filed suit against Mr. Kassenoff. On January 25, 2023, Plaintiff sued the same Defendants in the Supreme Court, New York County by filing a Summons with Notice, alleging that the Defendants made false statements and reports to the Matrimonial Court and to the Larchmont Police Department to obtain "fraudulent" temporary orders of protection in order "to orchestrate [Ms. Kassenoff's] arrest for a

11

purported violation of the" temporary orders of protection and "to cause [Ms. Kassenoff] to lose her job."  (*Catherine Kassenoff v. Allan Kassenoff et al*, Index No. 150761/2023 (the "New York County Action"), Summons with Notice, NYSCEF # 1 at 2-3).

On March 16, 2023, Plaintiff filed her Complaint in the New York County Action, alleging the following causes of action against all Defendants: abuse of process, false arrest/imprisonment, prima facie tort, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation.  (New York County Action, NYCSEF #7).  Plaintiff also alleged a claim under New York Judiciary Law § 487 against Mr. Dimopoulos and his law firm, Dimopoulos Bruggemann, P.C.  (*Id.*)  As set forth in her Summons with Notice, "Plaintiff seeks an award of monetary damages, including compensatory damages of $3,500,000 and punitive damages of $10,000,000, plus costs and interest, and such other and further relief as the Court may deem just and proper."  (New York County Action, NYCSEF #1).

### C.   Additional Harassing Proceedings Brought By Plaintiff

On December 1, 2020, Mr. Kassenoff received a copy of a grievance (the "First Grievance") that Plaintiff had filed against him with the Attorney Grievance Committee of the First Judicial Department.[6]  Plaintiff filed the First Grievance on April 3, 2020 and it was stamped received by the Attorney Grievance Committee on July 6, 2020.  (*Id.*)  According to the First Grievance, Mr. Kassenoff "violated [Ms. Kassenoff's] attorney client privilege with [her] attorney, Cynthia Monaco, to gain a tactical advantage in [the] divorce action.  After intercepting what he knew to be attorney/client communications without authorization, and in violation of criminal law,

---

[6] Given that Plaintiff's second grievance against Mr. Kassenoff alleged a violation of Judiciary Law Section 90(10) as a result of Mr. Kassenoff sharing a grievance with the Court-appointed forensic examiner, out of an abundance of caution, Mr. Kassenoff is not attaching either grievance as an exhibit.  However, both grievances are available for an in-camera review.

he published the communications in numerous court documents and disclosed them to other third parties, again with no authorization." (*Id.* at 4). Despite the fact that the Plaintiff's allegations were virtually identical to those alleged in her motion in the Matrimonial Court, she failed to apprise the Attorney Grievance Committee that Judge Koba had denied her motion on July 11, 2020, finding it "*wholly without merit*." (Dkts. 31-5 at 28, 31-6 at 28).

Mr. Kassenoff retained Mr. Michael S. Ross, Esq. to respond to the First Grievance, which he did on January 12, 2021. (Ex. 8). As Mr. Ross explained:

> the allegations in Ms. Kassenoff's Complaint [i.e., the First Grievance] are without merit and have already been rejected by Decision and Order of the Supreme Court, Westchester County, dated July 11, 2020. . . . Although the Complaint pre-dates the court's decision, Ms. Kassenoff was in possession of the court's decision meticulously dissecting and rejecting her claims as of July 11, 2020. In the four-plus months since she received that opinion, she failed to transmit that opinion to the Committee in order to prevent the Committee from making an intelligent decision during the screening process.

(*Id.* at 2-3). Mr. Ross further explained that Ms. Kassenoff filed the First Grievance in bad faith:

> *Ms. Kassenoff is a deeply, deeply troubled estranged spouse whose only goal is to inflict emotional pain and distress on her husband*, who is a highly-respected and highly-accomplished shareholder in one of the nation's most prominent law firms. Ms. Kassenoff has already been found by a court to have emotionally abused her children and to have inflicted unwarranted pain and suffering on those children and on Mr. Kassenoff. Her claim of improper access to privileged communications was thoroughly reviewed by a highly-regarded Justice of the Supreme Court and resoundingly rejected in a 35-page opinion.

(*Id.* at 2). In fact, Mr. Ross explained to the Attorney Grievance Committee that "Ms. Kassenoff is using the Committee to wrongfully and despicably inflict pain on her husband knowing that under New York's civil statutes she can do so free of civil consequences." (*Id.* at 3).

On April 8, 2022, Kelly Latham, Principal Attorney of the Attorney Grievance Committee, emailed Mr. Ross that the First Grievance has been "treated as a dismissal at this juncture." (Ex. 9). Then, on April 11, 2023, Jorge Dopico, Chief Attorney of the Attorney Grievance Committee, emailed Mr. Kassenoff (care of Mr. Ross) as follows:

Re:     Complaint of Catherine Kassenoff
        Docket No. 2020.1094

Dear Mr. Kassenoff:

As you are aware, we received a complaint against you from the above-named
complainant. Thereafter, we deferred the matter because there was pending litigation
regarding similar issues.

We recently received correspondence advising us that the litigation has now concluded
and there were no adverse findings against you. Therefore, we have concluded that no
further investigation or action is warranted at this time.

Yours truly,

Jorge Dopico
Chief Attorney

(Ex. 10).

On May 17, 2023, Plaintiff filed yet another grievance against Mr. Kassenoff (the "Second

Grievance"), this one for Mr. Kassenoff's alleged "violation of the Judiciary Law Section 90(10)"

by "forward[ing] a confidential grievance about [Ms. Kassenoff] (filed by [Court-Referee] Irene

Ratner) to the forensic custody evaluator assigned to [the] pending divorce action."  Mr. Kassenoff

again retained Mr. Ross, who responded to the Second Grievance on July 11, 2023.  (Ex. 11).  As

explained by Mr. Ross, he was "submitting this letter to address yet another baseless Complaint to

the Committee by [Mr. Kassenoff's] terribly troubled and mentally unbalanced wife Catherine

Kassenoff, Esq."  (*Id.* at 1).  Furthermore, Mr. Ross explained that "Referee Rather's grievance

against Ms. Kassenoff was provided to all counsel in the Kassenoff [divorce] litigation, including

Mr. Kassenoff's counsel.  Mr. Kassenoff then provided a copy of the grievance to the Forensic

Evaluator who was reporting to the Court on the issue of custody. . . .  And surely the letter, which

described Ms. Kassenoff's threats against the Court Attorney Referee, was relevant to the Forensic

Evaluator making recommendations in the case."  (*Id.* at 3).  Moreover, "Judiciary Law §90(10)

does *not* limit the ability of non-Court employees to reveal the existence of documents relating to a disciplinary matter; rather, it only limits the Court and its staff from disclosing such documents." (*Id.* (citing *Civ. Rights Corps. v. Pestana*, U.S. Dist. LEXIS 105315 (S.D.N.Y. 2022) (emphasis in original))).  Accordingly, Mr. Kassenoff has every expectation that the Second Grievance will be dismissed just like the first one.

If filing ***two*** baseless grievances (on top of ***three*** baseless lawsuits) were not enough, on January 27, 2022, Ms. Kassenoff filed a Petition for Writ of Habeas Corpus against Mr. Kassenoff with the Supreme Court, Westchester County.  (*The People of The State of New York v. Allan Kassenoff*, Index No. 55872/2022, NYSCEF #1).  According to the Plaintiff,

> The purpose of this Writ is to achieve adjudication of Motion Sequence #37 [seeking to lift the requirement that Ms. Kassenoff be therapeutically supervised when the children visit with her], so that contact with the Children can be normalized through the lifting of supervision or alternatively, Respondent will bear the cost of it, as this Court may deem just and proper.  The additional purpose of this Writ is to immediately restore Zoom calls with the Children.

(*Id.* at ¶ 26).

After noting that "[t]he parties involved in this proceeding are also involved in a matrimonial proceeding before this Court, where issues of custody and visitation are being litigated," Judge Susan Capeci denied the Petition on June 27, 2002:

> Given the procedural posture of the related matrimonial case where the issues of custody are being litigated, and this Court's determination that the there is no illegal detention of the children, the writ of habeas corpus is hereby denied.

(Index No. 55872/2022, NYSCEF #9 at 2).

As set forth above, Ms. Kassenoff's attacks have not been limited to the Defendants.  In fact, on December 9, 2021, Ms. Kassenoff sued Dr. Susan Adler, the therapist who had been seeing two of the Kassenoff children at that time, in the Supreme Court, Westchester County.  (*Catherine Kassenoff v. Susan Adler*, Index No. 67296/2021 (the "Adler Action")).  On January 24, 2022,

following a Demand for Complaint, Ms. Kassenoff filed a 33 page Complaint, asserting claims of professional malpractice, negligence, breach of fiduciary duty, breach of contract, fraudulent inducement and negligent infliction of emotional distress.  (Adler Action, NYSCEF # 4).  On February 14, 2002, Dr. Adler filed a motion to dismiss the Complaint.  (Adler Action, NYSCEF ## 5-12).  On September 17, 2022, the Supreme Court dismissed all of the claims asserted in the Complaint, except the one for fraudulent inducement:

> Accepting the facts in the Complaint as true and affording them "a liberal construction", prior to entering into the contracts to provide psychotherapy to the children, Adler fraudulently failed to inform [Ms.] Kassenoff "that she intended to subject the Children to 'reprogramming therapy' with the goal of promoting a fabricated claim of parental alienation in support of Allan Kassenoff's litigation efforts to hide his domestic violence and abuse and win a custody dispute". . . .  In sum, Adler has not established that the cause of action for fraudulent inducement fails to state a cause of action.

(Adler Action, NYSCEF # 32 at 12-13 (citations omitted)).

On November 10, 2022, Plaintiff served a Subpoena Duces Tecum (the "Subpoena") on Mr. Kassenoff's then employer, Greenberg Traurig, LLP, seeking production of Mr. Kassenoff's emails and documents in connection with the Adler Action.  (Adler Action, NYSCEF ## 41 (the Subpoena), 44 (affidavit of service)).  Despite the fact that the sole remaining claim against Dr. Adler was for fraudulent inducement, Ms. Kassenoff's Subpoena sought 7 distinct categories of documents – none of which were relevant to the fraudulent inducement cause of action.  Accordingly, on November 30, 2022, Mr. Kassenoff filed a Motion to Quash and for a Protective Order.  (Adler Action, NYSCEF # 52).  On December 19, 2022, the *Adler* Court granted Mr. Kassenoff's motion and quashed the Subpoena.  (Adler Action, NYSCEF # 98).  In granting the motion, the *Adler* Court expressly held that the Subpoena was *not* directed to material relevant to Ms. Kassenoff's sole remaining claim:

> In this action, [Ms.] Kassenoff's only remaining claim is for fraudulent inducement. In essence, [Ms.] Kassenoff alleges that Adler fraudulently induced her to enter into

contracts by misrepresenting and concealing the services that she was going to provide. [Ms.] Kassenoff also alleges that Adler withheld information regarding relationships that she had with the attorney for the children and the court appointed neutral forensic custody evaluator, adding that it "created an actual, potential, or perceived conflict of interest that would inappropriately influence and compromise her ability to exercise professional judgment and render treatment to the Children."

*Against this backdrop, the court finds that the subpoena does not seek "matter material and necessary in the prosecution or defense of an action" (CPLR 3101[a] [4]). Instead, it seeks a vast shopping list of material regarding communications to and from a non-party law firm whose relevance has not been established. Therefore, the motion to quash the subpoena must be granted.*

(*Id.* at 9 (citation omitted)). In short, just like the ***three*** litigations discussed above (including the instant Action), the two grievances, and the Petition for a Writ of Habeas Corpus, Ms. Kassenoff served the Subpoena (on Mr. Kassenoff's then employer no less) in order to harass him.

If all of the above were not enough, on May 27, 2023, Ms. Kassenoff publicly posted on Facebook that she is "writing [her] last post ever [as she] will be ending [her] own life" via medically assisted suicide in Switzerland. Ms. Kassenoff continued, blaming Mr. Kassenoff and the matrimonial court for all of her problems and (falsely) claiming to be a victim of domestic violence – a claim she repeatedly made throughout the Matrimonial Action and which was properly rejected each and every time. Worse yet, Ms. Kassenoff's May 27 suicide post resulted in Mr. Robert Harvey, a social media "influencer," conducting a slanderous and malicious smear campaign against Mr. Kassenoff[7] by creating and uploading false, defamatory and misleading videos to various social media platforms about Mr. Kassenoff and then instructing his 3,000,000+ followers to bombard Mr. Kassenoff's then employer, Greenberg Traurig, LLP ("GT"), and Samsung, one of GT's biggest clients, with emails, phone calls, voicemails, and social media attacks, resulting in Mr. Kassenoff losing his job at Greenberg Traurig.

---

[7] Upon information and belief, prior to making her final Facebook post, Ms. Kassenoff reached out to Mr. Harvey in order to conspire with him to further harass Mr. Kassenoff.

### III.   LEGAL STANDARD

Courts have the power to award sanctions under both 28 U.S.C. § 1927 and their inherent authority.  "Section 1927 allows a court to require an attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (quoting 28 U.S.C. § 1927).  "In the Second Circuit, '[b]ad faith is the touchstone of an award under this statute.'"  *Chatham Partners, Inc. v. Fidelity & Deposit Co. of Md.*, 2001 WL 1262960, at *1 (S.D.N.Y. Oct. 1, 2001) (quoting *U.S. v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)).  "A court may infer bad faith when a party undertakes frivolous actions that are completely without merit."  *Huebner*, 897 F.3d at 55 (internal quotation marks omitted).  In short, "an award under § 1927 is proper when the attorney's actions are *so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose* such as delay."  *U.S. v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991).

Additionally, "[t]he federal district courts are vested with an inherent power to impose sanctions.  Sanctions imposed pursuant to the court's inherent authority are proper when a party uses the judicial forum for improper purposes or abuses the judicial process."  *Garcia De Leon v. N.Y. Univ.*, 2022 WL 2981367, at *2 (S.D.N.Y. July 28, 2022); *see also Capital Bridge Co. v. IVL Techs. Ltd.*, 2007 WL 3168327, at *8 (S.D.N.Y. Oct. 26, 2007) (Karas, J.) (Under its inherent authority, "[a] court may also sanction where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.").  "This power stems from the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Int'l Bhd. of Teamsters*, 948 F.2d at 1345 (internal quotation marks omitted).  "The court's inherent sanction power is broader than its power to impose sanctions under either Rule 11 or 28

U.S.C. § 1927.   Whereas courts are statutorily authorized to sanction attorneys, courts may sanction an attorney, a party, or both pursuant to its inherent power." *Garcia De Leon*, 2022 WL 2981367, at *2.

## IV.   ARGUMENT

### A.   Sanctions Are Appropriate Under Both 28 U.S.C. § 1927 And The Court's Inherent Authority

"In order to impose sanctions under either Section 1927 or its inherent power, a court must find, by clear and convincing evidence, that: '(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay.'" *Capital Bridge Co.*, 2007 WL 3168327, at *8 (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)).   Claims are "entirely without color" if they "lack[] any legal or factual basis." *Huebner*, 897 F.3d 42 at 56 (internal brackets & quotation marks omitted).   Moreover, "[a] court may infer bad faith when a party undertakes frivolous actions that are completely without merit." *Id.* at 55.

"In practice, 'the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 144 (2d Cir. 2012) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)); *see also Garcia De Leon*, 2022 WL 2981367, at *2 (holding that "courts may sanction an attorney, a party, or both pursuant to its inherent power").   Accordingly, the Court has the authority to sanction both Mr. Burke (under § 1927 and/or the Court's inherent power) and Ms. Kassenoff (under the Court's inherent power).

Sanctions are appropriate in this case as the asserted claims lacked a "colorable basis" and,

equally important, were "brought in bad faith." *Capital Bridge Co.*, 2007 WL 3168327, at *8; *see also Huebner*, 897 F.3d at 55.  As detailed above, Judge Koba's July 11 Order rendered this Action frivolous (i.e., lacking a "colorable basis") from the start.  Specifically, as this Court held in granting Defendants' Motion to Dismiss, "[t]he [Matrimonial] Court found that *Plaintiff's claims* concerning Mr. Kassenoff and Dimopoulos's conduct *were meritless* after reviewing the briefing by the parties and the factual record.  *Thus, the Court agrees that res judicata bars Plaintiff's Action.*" (Dkt. 45 at 13; *see also id.* at 12).  In fact, "when applicable preclusion doctrines so clearly foreclose further litigation, bad faith and the intent to harass become apparent." *Scott v. Major*, 1990 WL 21319, at *1 (N.D.N.Y. Mar. 6, 1990), *aff'd*, 923 F.2d 844 (2d. Cir. 1990) (awarding sanctions against plaintiff and her attorney).

Moreover, courts have repeatedly concluded that it is appropriate to sanction plaintiffs and their attorneys for pursuing claims that are clearly precluded under the doctrine of res judicata and therefore "completely without merit" and lacking a "colorable basis."  For example, in *Davey v. Dolan*, the plaintiff, Mr. Peter Davey, and the defendant, Ms. Mary Dolan, had been through "long and contentious divorce proceedings," following which Mr. Davey repeatedly sued Ms. Dolan, her attorneys, Ms. Dolan's brother and sister and even the divorce judge, Justice Shapiro.  453 F. Supp. 2d 749, 752, 755 (S.D.N.Y. 2006), *aff'd*, 292 F. App'x 127 (2d Cir. 2008).  Each of the prior lawsuits brought by Mr. Davey was dismissed.  *See id.* at 752-53.  With respect to this latest case filed by Mr. Davey, the SDNY dismissed the complaint based upon the doctrine of res judicata:

> Plaintiff either has litigated or could have litigated all matters against Mary Davey concerning her motives as to the divorce, the events surrounding plaintiff's arrest, her allegedly contradictory testimony as to the cause of her divorce, and the like. He cannot relitigate these issues in a different forum.  As such, his claims are barred by res judicata.

*Id.* at 755.  The *Davey* Court proceeded to sanction the plaintiff for filing suit on claims that he "knew or should have known" were precluded:

> Here, sanctions are appropriate because plaintiff's claims against Davey and Dolan
> are completely without merit.  Based on the prior dispositions of his repeated state
> court proceedings, plaintiff knew or should have known that he was "altogether
> precluded from recycling those same claims in federal court."

*Id.* at 757 (quoting *Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992)).  Moreover, the *Davey* Court

concluded that:

> Given the utter lack of merit of plaintiff's claims, his vexatious litigation history,
> and the fact that he has continually and continues to file repetitive suits despite prior
> court orders, *the Court can only reasonably conclude that his actions were
> "undertaken for some improper purpose," namely to continually harass the
> defendants*.  Accordingly, pursuant to 28 U.S.C. § 1927 and its inherent authority,
> the Court orders plaintiff to pay the reasonable costs, expenses, and attorneys' fees
> incurred by the defendants in responding to this action.

*Id.* at 758.  Similarly, the Plaintiff and Mr. Burke "knew or should have known" that this Action

was barred under the doctrine of res judicata.  And, as in the *Davey* Court, sanctions are clearly

appropriate here as this "Court can only reasonably conclude that [Ms. Kassenoff's] actions were

'undertaken for some improper purpose,' namely to continually harass the defendants."

The *Davey* decision is not the only case where a court in this judicial district sanctioned a

plaintiff for bringing claims precluded by the doctrine of res judicata.  In *Lipin v. National Union

Fire Ins. of Pittsburgh*, the SDNY sanctioned the plaintiff when, "[b]ased on the prior decisions

of the state and federal courts, [plaintiff] should have been able to determine that [his] claims were

barred by collateral estoppel."  202 F. Supp. 2d 126, 140 (S.D.N.Y. 2002); *see also Pagnucci v.

City of New York*, 993 F.2d 310, 312-13 (2d Cir. 1993) (affirming the district court's award of

sanctions with respect to plaintiffs whose claims were barred by res judicata); *Cohen v. Bane*, 853

F. Supp. 620, 630 (E.D.N.Y. 1994) (granting Rule 11 sanctions because "Plaintiffs' attorney could

easily have determined the likely success by examining the case law and considering the fact that

many of the claims were barred by res judicata").  In sum, Mr. Burke

> was fully cognizant of the fact that his client[] had unsuccessfully raised the claims
> asserted here in prior state court proceedings.  He either knew, or as a conscientious

> attorney should have known, that plaintiff[] [was] altogether precluded from recycling those same claims in federal court. *This is not an instance, in other words, where plaintiff[] arguably could have prevailed on the merits but failed to do so. Rather, [plaintiff] chose to proceed in the face of an unambiguous legal bar to the action brought.*

*Aller v. New York Bd. of Elections*, 586 F. Supp. 603, 607 (S.D.N.Y. 1984) (awarding sanctions). In fact, the *Aller* Court awarded the defendants the *full amount* of their legal fees after noting that "counsel for plaintiffs has engaged in a willful abuse of the judicial process by counselling plaintiffs to pursue constitutional *claims they were legally precluded* from litigating in this forum." *Id.* at 608.

Moreover, in addition to filing a frivolous Complaint, Mr. Burke has "multiplie[d] the proceedings . . . unreasonably and vexatiously," further supporting an award of sanctions under § 1927.  Time and again, Defendants explained that the instant Action was baseless as all asserted claims were barred under the doctrine of res judicata.  In fact, as demonstrated above, Plaintiff and Mr. Burke had at least *six* distinct opportunities to withdraw the present Action – and should have done so each time:

(1)     after receiving Defendants' April 9, 2022 letter;
(2)     after receiving Defendants' May 12, 2022 pre-motion conference letter;
(3)     after the June 15, 2022 pre-motion conference;
(4)     after receiving Defendants' June 16, 2022 letter;
(5)     after Defendants filed their Motion to Dismiss on July 1, 2022; and
(6)     after the Appellate Division, Second Department issued its decision affirming Judge Koba's July 11 Order.

By refusing to withdraw the Complaint each time, Plaintiff and Mr. Burke have accomplished nothing more than needlessly and vexatiously multiplying these proceedings, causing Mr. Kassenoff to expend additional resources litigating a baseless case.  Similarly, Mr. Burke's filing of the Supplemental Affidavit – *after* the Plaintiff's extended deadline for opposing the Motion to Dismiss and *without* seeking leave of court or even providing *any* explanation for such late filing – necessitated more motion practice.  Similarly, on May 30, 2023, the Court

conducted a premotion conference in connection with the instant Motion.  During the hearing, the

Court instructed Mr. Burke to find out if his client had in fact committed suicide and, if she had,

whether her estate was going to continue litigating this frivolous action.  After more than two

months, Mr. Burke wrote to the Court on August 9, 2023, claiming that he is "not involved in any

aspect of probate and do[es] not speak for the Estate.  Any question of whether her estate will or

will not continue to be involved in the litigation she commenced, should be directed to Attorney

Baker."  (Dkt. 70 at 2).  The Court had instructed Mr. Burke at the end of May to find out whether

or not Ms. Kassenoff's estate will continue this litigation.  For him to simply say – after 2 ½ months

of purportedly looking into that question – "find out yourself" is outrageous.  In short, the instant

Action is "'a case study in vexatious, harassing litigation brought without any proper purpose –

exactly the sort of litigation sanctionable by . . . 28 U.S.C. § 1927.'"  *Int'l Bhd. of Teamsters*, 948

F.2d at 1343 (quoting *U.S. v. Int'l Bhd. of Teamsters*, 134 F.R.D. 50, 61 (S.D.N.Y. 1991)).

Ms. Kassenoff should also be sanctioned – under the Court's inherent authority – for the

identical reasons that Mr. Burke should be sanctioned.  *See Huebner*, 897 F.3d at 57 (affirming the

district court's sanction of plaintiff himself under "its inherent authority for the same reasons as

Poltorak PC, noting that, as an attorney experienced in FDCPA litigation, [plaintiff] played a

substantial role in crafting his case's litigation strategy").  Additionally, unlike Mr. Burke – whose

conduct has been limited to the instant Action as well as the appeal of Judge Koba's July 11 Order

– this Action is simply one piece of a much broader pattern of Plaintiff's harassment of Mr.

Kassenoff.  For example, as set forth above, Plaintiff has also:

(1)     filed the Kings County Action on November 13, 2020;
(2)     filed the New York County Action on January 25, 2023;
(3)     filed two grievances against Mr. Kassenoff;
(4)     filed a Petition for Writ of Habeas Corpus against Mr. Kassenoff; and
(5)     served an incredibly broad subpoena on Mr. Kassenoff's then employer, seeking a
        "vast shopping list of material" for use in her lawsuit against Dr. Adler.

For all of the forgoing reasons, Mr. Kassenoff respectfully requests that the Court sanction the Plaintiff and Mr. Burke by making them pay the legal fees that he would have billed as an attorney in this Action.  *See, e.g., Carousel Foods of America v. Abrams Co.*, 423 F. Supp. 2d 119, 125 (S.D.N.Y. 2006) (holding that the "reimbursement of counsel fees is the appropriate sanction in this case").  As set forth in the accompanying Declaration of Allan Kassenoff, Mr. Kassenoff spent 173 hours litigating this case, which at his 2022 Greenberg Traurig rate of $1095 per hour (Kassenoff Aff., ¶ 15), amounts to $189,435 in legal fees.  (Ex. 12).

### B.   Mr. Kassenoff Is Entitled To Legal Fees Despite Proceeding *Pro Se*

Although one court in this judicial district has concluded that *pro se* attorneys "may [not] recover under Section 1927 for the work they did representing themselves in [a] proceeding," that court expressly noted that "the Second Circuit has not addressed this issue."  *Knopf v. Esposito*, 2018 WL 1226023, at *4 (S.D.N.Y. March 5, 2018), *vacated on other grounds*, 2018 WL 3579104 (S.D.N.Y. July 25, 2018).  This Court should decline to follow the *Knopf* Court – which is not binding on this Court – for at least two reasons.  First, precluding a *pro se* attorney litigant from recovering legal fees would be contrary to the purpose behind § 1927, namely, "to deter egregious attorney misconduct."  *16 Casa Duse, LLC v. Merkin*, 2020 WL 2833848, at *5 (S.D.N.Y. June 1, 2020).  Second, precluding *pro se* attorneys from receiving an award of legal fees under § 1927 would present attorneys with the following "lose-lose" proposition upon being served with a frivolous complaint: *either* (1) retaining a lawyer and spending a substantial amount in legal fees – with only the slim chance of recovering those fees via an award of sanctions *or* (2) handling the case himself – and, thus, not expending legal fees – but spending an inordinate amount of time that could otherwise be spent on paying clients.  In short, failing to award Mr. Kassenoff for the work he did representing himself under 28 U.S.C. § 1927 would place a *pro se* attorney at the mercy of his adversary who could engage in sanctionable conduct without the risk of monetary sanctions.

24

But, even if this Court concludes that an award of legal fees is not available to Mr. Kassenoff under § 1927, the Court can *still* award legal fees under its inherent authority.  In fact, after concluding that an award of legal fees was not available to Mr. Esposito under § 1927, as he was self-represented, the *Knopf* Court awarded him legal fees under its inherent authority.  2018 WL 1226023, at *7 (awarding Esposito $20,000, where "Esposito, who represented himself, calculated what he would have billed as an attorney in this action").  As the Federal Circuit explained in *Pickholtz v. Rainbow Techs., Inc.*, the leading case on this issue:

> We see no reason why in proper circumstances [an award of attorneys' fees] may not be applied in favor of a *pro se* attorney under inherent power.  Failure to do so, as Pickholtz has noted, would place a *pro se* litigant at the mercy of an opponent who might engage in otherwise sanctionable conduct, but not be liable for attorney fees to a *pro se* party. . . .  [A]ttorney fees are such a valuable and frequently used tool in the armamentarium of trial judges that we see no reason for categorically ruling them out of consideration.  The district court therefore abused its discretion in determining that it lacked authority to award attorney fees to a *pro se* attorney.

284 F.3d 1365, 1377-78 (Fed. Cir. 2002).  Moreover, several district courts (including the SDNY in *Knopf*) have similarly concluded that "fees to pro se litigants are awardable under the courts inherent power."  *Richard v. Joseph*, 2023 WL 358924, at *2 (E.D. Cal. Jan. 23, 2023); *see also Ross v. Baldera*, 2017 WL 3476065, at *7 (D. New Mex. Aug. 11, 2017); *Egan v. Huntington Copper Moody & Maguire, Inc.*, 2105 WL 1631547 (N.D. Ill. Apr. 10, 2105).

## V.    CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court grant his motion for sanctions.

Dated: September 15, 2023                         Respectfully submitted,

                                                  By: */s/ Allan Kassenoff*
                                                  Allan Kassenoff, Esq.
                                                  161 Beach Avenue

Larchmont, NY 10538
akassenoff@yahoo.com
(917) 623-8353

*Pro Se* Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on September 15, 2023, a true and correct copy of the foregoing document was emailed to Temporary_Pro_Se_Filing@nysd.uscourts.gov for uploading to the Court's CM/ECF system, which will send a notice of electronic filing to all parties by operation of the system.

*/s/ Allan Kassenoff*
Allan Kassenoff